UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re:                                               Chapter 11

Tara Jewels Holdings, Inc., *et al.*,                Case No.:  19-12060 (SCC)

                              Debtors.               (Jointly Administered)

------------------------------------------------------------x

---

### FIRST AMENDED DISCLOSURE STATEMENT FOR THE JOINT PLAN OF LIQUIDATION FOR TARA JEWELS HOLDINGS, INC. AND TARA JEWELS LLC *F/K/A* FABRIKANT-TARA INTERNATIONAL LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

---

**SilvermanAcampora LLP**
Attorneys for the Debtors
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Ronald J. Friedman
Brian Powers
Haley L. Trust

Dated:  As of October 7, 2019

# TABLE OF CONTENTS

IMPORTANT DATES ................................................................................................................ 1

I.   INTRODUCTION AND GENERAL BACKGROUND ..................................................... 2

   A.   PURPOSE AND EFFECT OF THE PLAN.................................................................. 5

   B.   PRE-PETITION BACKGROUND.............................................................................. 5

   C.   OVERVIEW OF CHAPTER 11 ................................................................................. 6

   D.   CONFIRMATION AND CONSUMMATION OF THE PLAN................................. 6

   E.   RISK FACTORS ........................................................................................................ 6

II.  BACKGROUND OF THE CHAPTER 11 CASES ........................................................... 7

   A.   BANKRUPTCY PETITION ...................................................................................... 7

   B.   MOTIONS AND ORDERS........................................................................................ 7

      1.   Motion to Extend Deadline to File Schedules and Statements ........................ 7

      2.   Motion to Maintain Existing Bank Accounts and Business Forms ................. 7

      3.   Motion to Jointly Administer the Debtors' Chapter 11 Cases ........................ 7

   C.   NO APPOINTMET OF A CREDITORS' COMMITTEE ................................................ 7

   D.   CLAIMS PROCESS AND CLAIMS BAR DATE ................................................... 7

      1.   Section 341(a) Meeting of Creditors................................................................ 8

      2.   Schedules and Statements ................................................................................ 8

      3.   General and Governmental Bar Dates ............................................................ 8

III. SUMMARY OF PLAN .................................................................................................... 8

   A.   ADMINISTRATIVE AND PRIORITY TAX CLAIMS ......................................... 8

      1.   Administrative Claims....................................................................................... 8

      2.   Priority Tax Claims .......................................................................................... 9

      3.   Fees Payable to the United States Trustee ....................................................... 9

   B.   CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND
      INTERESTS .............................................................................................................. 9

      1.   Administrative and Priority Tax Claims .......................................................... 9

      2.   Summary of Classification and Treatment of Classified Claims and Interests.............. 10

      3.   Classification and Treatment of Claims Against the Debtors........................ 10

      4.   Special Provision Governing Unimpaired Claims ......................................... 12

   C.   ACCEPTANCE OR REJECTION OF THE PLAN ...................................................... 12

      1.   Presumed Acceptance of Plan ....................................................................... 12

      2.   Voting Classes................................................................................................. 12

      3.   Acceptance by Impaired Classes of Claims ................................................... 12

HTRUST/2336303.3/067837

4.   Substantive Consolidation of Debtors' Estates ..................................................... 13

D.   MEANS FOR IMPLEMENTATION OF THE PLAN .................................................... 13

1.   Source of Funds ............................................................................................. 13

2.   Establishment of Creditor Trust .................................................................... 13

3.   Powers and Obligations of the Creditor Trust and Creditor Trustee ............. 16

4.   Carve-Out Amount and Adequate Protection to KeyBank ........................... 17

5.   General Release of KeyBank ......................................................................... 18

E.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ......... 18

1.   Assumptions and Rejection of Executory Contracts and Unexpired Leases ................. 18

2.   Claims Based on Rejection of Executory Contracts and Unexpired Leases ................. 19

3.   Modifications, Amendments, Restatements or Other Agreements ................. 19

4.   Reservation of Rights .................................................................................... 19

F.   PROVISIONS FOR GOVERNING DISTRIBUTION ................................................. 19

1.   Distributions for Allowed Claims .................................................................. 19

2.   Distributions on Account of Claims Allowed After the Effective Date ........ 20

3.   Delivery and Distributions and Undeliverable or Unclaimed Distributions ................. 20

4.   Compliance with Tax Requirements/Allocations .......................................... 21

5.   Timing and Calculation of Amounts To Be Distributed ............................... 22

6.   Setoffs ........................................................................................................... 22

G.   PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND
     UNLIQUIDATED CLAIMS OR INTERESTS ............................................................. 22

1.   Resolution of Disputed Claims ..................................................................... 22

2.   Claims Allowance .......................................................................................... 24

3.   Controversy Concerning Impairment ............................................................ 24

4.   Disallowance of Claims ................................................................................. 24

5.   Amendments to Claims .................................................................................. 24

H.   CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION
     OF THE PLAN ............................................................................................................. 25

1.   Conditions Precedent to Confirmation .......................................................... 25

2.   Conditions Precedent to Consummation ........................................................ 25

3.   Waiver of Conditions ..................................................................................... 25

4.   Effect of Non-Occurrence of Conditions to Consummation .......................... 25

I.   SETTLEMENT, INJUNCTION, AND RELATED PROVISIONS ............................... 26

1.   Compromise and Settlement .......................................................................... 26

2.   Exculpation .................................................................................................... 26

HTRUST/2336303.3/067837

    3.   Preservation of Rights of Action / Reservation of Rights ........................... 27

    4.   Preservation of Insurance ......................................................................... 28

    5.   Injunction ................................................................................................. 28

  J.   RETENTION OF JURISDICTION ..................................................................... 30

  K.   MISCELLANEOUS PROVISIONS .................................................................... 31

    1.   Payment of Statutory Fees ...................................................................... 31

    2.   Quarterly Reports ................................................................................... 31

    3.   Modification of Plan ............................................................................... 31

    4.   Revocation of Plan ................................................................................. 32

    5.   Successors and Assigns .......................................................................... 32

    6.   Reservation of Rights ............................................................................. 32

    7.   Further Assurances ................................................................................. 32

    8.   Severability ............................................................................................. 32

    9.   Service of Documents ............................................................................. 33

IV.  SOLICITATION AND VOTING PROCEDURES ................................................. 33

  A.   RECORD DATE ............................................................................................ 33

  B.   VOTING DEADLINE ...................................................................................... 34

  C.   SOLICITATION PROCEDURES ...................................................................... 34

    1.   Solicitation Package ............................................................................... 34

    2.   Distribution of the Solicitation Package ................................................ 34

  D.   VOTING AND TABULATION PROCEDURES .................................................. 35

    1.   Ballot Tabulation .................................................................................... 35

V.  CONFIRMATION PROCEDURES ..................................................................... 35

  A.   CONFIRMATION HEARING .......................................................................... 35

    1.   Confirmation Hearing Date .................................................................... 35

    2.   Plan Objection Deadline ........................................................................ 36

  B.   STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN ................. 37

    1.   Best Interests of Creditors Test / Liquidation Analysis ......................... 38

    2.   Feasibility ............................................................................................... 39

    3.   Acceptance by Impaired Classes ............................................................ 39

  C.   RISK FACTORS ........................................................................................... 39

  D.   CONTACT FOR MORE INFORMATION .......................................................... 40

VI.  PLAN RELATED RISK FACTORS AND ALTERNATIVES TO
CONFIRMATION AND CONSUMMATION OF THE PLAN .......................................... 40

  A.   GENERAL BANKRUPTCY LAW AND PLAN-RELATED

iii

CONSIDERATIONS ................................................................................................ 40

   1.  Parties in Interest May Object to the Classification of Claims and Interests ................ 40

   2.  Failure to Satisfy Vote Requirement ............................................................................. 40

   3.  The Debtors May Not Be Able to Secure Confirmation of the Plan or Confirmation May Be Delayed ...................................................................................... 41

   4.  Creditor Trust May Object to the Amount of Classification Claim ............................... 41

   5.  Risk of Non-Occurrence of the Effective Date ............................................................. 41

   6.  Risks Affecting Potential Recoveries ............................................................................. 41

B.  RISKS ASSOCIATED WITH FORWARD LOOKING STATEMENTS ........................ 42

C.  DISCLOSURE STATEMENT DISCLAIMER ................................................................ 42

   1.  Information Contained Herein Is For Soliciting Votes ................................................... 42

   2.  This Disclosure Statement Was Not Reviewed or Approved by the Securities and Exchange Commission ............................................................................................ 42

   3.  This Disclosure Statement May Contain Forward Looking Statements ........................ 42

   4.  No Legal or Tax Advice is Provided to You by This Disclosure Statement ................. 42

   5.  No Admissions Made ...................................................................................................... 43

   6.  Failure to Identify Litigation Claims or Projected Objections ....................................... 43

   7.  No Waiver of Right to Object or Right to Recover Transfers and Assets ...................... 43

   8.  Potential Exists for Inaccuracies, and the Debtors Have No Duty to Update ................ 43

D.  ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN .............................................................................................................. 43

VII.  CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ................. 44

VIII.  CONCLUSION AND RECOMMENDATION ................................................................. 45

## __IMPORTANT DATES__

- Voting Deadline by which Ballots must be received: November 18, 2019, at 4:00 p.m. (prevailing Eastern Time)

- Deadline by which to file and serve objections to Confirmation of the Plan: November 18, 2019, at 4:00 p.m. (prevailing Eastern Time)

- Hearing on Confirmation of the Plan: November 25, 2019, at 11:00 a.m. (prevailing Eastern Time)

THE VOTING AGENT MUST __ACTUALLY RECEIVE__ YOUR BALLOT ON OR BEFORE THE ABOVE STATED VOTING DEADLINE.

THE DEBTORS CANNOT PROVIDE ANY ASSURANCE THAT THE DISCLOSURE STATEMENT (AND THE EXHIBITS) ULTIMATELY APPROVED IN THE CHAPTER 11 CASE (A) WILL CONTAIN ANY OF THE TERMS IN THIS CURRENT DOCUMENT, OR (B) WILL NOT CONTAIN DIFFERENT, ADDITIONAL TERMS THAT DO NOT APPEAR IN THIS DOCUMENT.

HTRUST/2336303.3/067837

THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE FINAL BANKRUPTCY COURT APPROVAL OR THE BANKRUPTCY COURT'S RECOMMENDATION ON THE MERITS OF THE DEBTOR'S PLAN OF REORGANIZATION.

## I.    INTRODUCTION AND GENERAL BACKGROUND[1]

On June 21, 2019 (the "Petition Date"), Tara Jewels Holdings, Inc. ("Holdings") and Tara Jewels LLC *f/k/a* Fabrikant-Tara International LLC ("Fabrikant", and together Holdings, the "Debtors"), filed voluntary petitions for relief (the "Chapter 11 Cases") with the United States Court for the Southern District of New York (the "Bankruptcy Court"), under Chapter 11 of title 11, Untied States Code (the "Bankruptcy Code").   The Debtors submit this Disclosure Statement pursuant to Bankruptcy Code §1125, to Holders of Claims in connection with: (a) the solicitation of votes to accept or reject *The Joint Plan of Liquidation Under Chapter 11 of Bankruptcy Code of Tara Jewels Holdings, Inc. and Tara Jewels LLC F/K/A Fabrikant-Tara International LLC*, as the same may be amended from time to time (the "Plan"), and (b) the Hearing to confirm the Plan, which is scheduled for November 25, 2019, at 11:00 a.m. (prevailing Eastern Time) (the "Confirmation Hearing").   A copy of the Plan is annexed hereto as Exhibit A and incorporated herein by reference.

By order entered October 7, 2019 (the "Disclosure Statement Order"), the Bankruptcy Court approved this Disclosure Statement, in accordance with Bankruptcy Code §1125, as containing "adequate information" to enable a hypothetical, reasonable creditor or investor typical of Holders of Claims against the Debtors to make an informed judgment as whether to accept or reject the Plan, and authorized its use in connection with the solicitation of votes with respect to the Plan.

The Disclosure Statement Order sets forth in detail the deadlines, procedures and instructions for voting to accept or reject the Plan, and for filing objections to confirmation of the Plan, the Record Date for voting purposes, and the applicable standards for tabulating Ballots.   In addition, detailed voting instructions accompany each Ballot.   Each Holder of a Claim entitled to vote on the Plan should read this Disclosure Statement and all Exhibits hereto including the Plan, the Disclosure Statement Order, and the instructions accompanying the Ballot in their entirety before voting on the Plan.   These documents contain important information concerning the classification of Claims and Interests for voting purposes and the tabulation of votes. APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT, HOWEVER, CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN.   No solicitation of votes may be made except pursuant to this Disclosure Statement and Bankruptcy Code §1125.   In voting on the Plan, Holders of Claims and Interests should not rely on any information relating to the Debtors, other than that contained in this Disclosure Statement, the Plan, and all exhibits and appendices hereto and thereto.

The Debtors may file a plan supplement (the "Plan Supplement") containing certain

---

[1] All capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Plan.

documents relating to the Plan.  The Plan Supplement may be filed as early as practicable but in no event less than seven (7) days prior to the Confirmation Hearing, or on such other date as may be established by the Bankruptcy Court.  Parties may obtain a copy of the Plan and Plan Supplement (i) from counsel to the Debtors, or (ii) for a fee via PACER at http://www.nyeb.uscourts.gov/.

THE DEBTORS BELIEVE THAT THE PLAN PROVIDES FOR THE BEST AVAILABLE RECOVERY TO THE DEBTORS' CREDITORS.  THE DEBTORS RECOMMEND THAT HOLDERS OF CLAIMS ELIGIBLE TO VOTE ON THE PLAN VOTE TO ACCEPT THE PLAN.

THE DEBTORS ARE PROVIDING THE INFORMATION IN THIS DISCLOSURE STATEMENT FOR PURPOSES OF SOLICITING VOTES TO ACCEPT OR REJECT THE PLAN.  NOTHING IN THIS DISCLOSURE STATEMENT MAY BE RELIED UPON OR USED BY ANY ENTITY FOR ANY OTHER PURPOSE.

A GLOSSARY OF DEFINED TERMS UTILIZED IN THE PLAN AND DISCLOSURE STATEMENT IS SET FORTH IN ARTICLE I.B. OF THE PLAN.

NO LEGAL OR TAX ADVICE IS PROVIDED TO YOU BY THIS DISCLOSURE STATEMENT.  THE DEBTORS URGE EACH HOLDER OF A CLAIM TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY LEGAL, FINANCIAL, SECURITIES, TAX OR BUSINESS ADVICE IN REVIEWING THIS DISCLOSURE STATEMENT, THE PLAN AND EACH OF THE PROPOSED TRANSACTIONS CONTEMPLATED THEREBY.

IT IS DEBTORS' POSITION THAT THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF FACT, LIABILITY, STIPULATION OR WAIVER.  RATHER, HOLDERS OF CLAIMS AND INTERESTS AND OTHER ENTITIES SHOULD CONSTRUE THIS DISCLOSURE STATEMENT AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS RELATED TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER PENDING OR THREATENED LITIGATION OR ACTIONS.

NO RELIANCE SHOULD BE PLACED ON THE FACT THAT A PARTICULAR LITIGATION CLAIM OR PROJECTED OBJECTION TO A PARTICULAR CLAIM IS, OR IS NOT, IDENTIFIED IN THE DISCLOSURE STATEMENT.  THE CREDITOR TRUST MAY SEEK TO INVESTIGATE, FILE AND PROSECUTE CLAIMS AND MAY OBJECT TO CLAIMS AFTER THE CONFIRMATION OR EFFECTIVE DATE OF THE PLAN WHETHER OR NOT THE DISCLOSURE STATEMENT IDENTIFIES ANY SUCH CLAIMS OR OBJECTIONS TO CLAIMS.

THIS DISCLOSURE STATEMENT CONTAINS, AMONG OTHER THINGS, SUMMARIES OF THE PLAN, CERTAIN STATUTORY PROVISIONS, CERTAIN EVENTS IN THE DEBTORS' CHAPTER 11 CASES AND CERTAIN DOCUMENTS RELATED TO THE PLAN THAT ARE ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE.  ALTHOUGH THE DEBTORS BELIEVE THAT THESE SUMMARIES ARE

HTRUST/2336303.3/067837

FAIR AND ACCURATE, THESE SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY TO THE EXTENT THAT THE SUMMARIES DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS OR EVERY DETAIL OF SUCH EVENTS.  IN THE EVENT OF ANY INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THIS DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN OR ANY OTHER DOCUMENTS INCORPORATED HEREIN BY REFERENCE, THE PLAN OR SUCH OTHER DOCUMENTS WILL GOVERN FOR ALL PURPOSES.

THE DEBTORS HAVE REVIEWED THE FINANCIAL AND CLAIM INFORMATION PROVIDED IN THIS DISCLOSURE STATEMENT.  ALTHOUGH THE DEBTORS HAVE USED THEIR REASONABLE BUSINESS JUDGMENT TO ENSURE THE ACCURACY OF THIS INFORMATION, THE FINANCIAL AND CLAIM INFORMATION CONTAINED IN, OR INCORPORATED BY REFERENCE INTO, THIS DISCLOSURE STATEMENT WAS SOLELY OBTAINED FROM THE FILINGS IN THE CHAPTER 11 CASES AND HAS NOT BEEN AUDITED.

THE DEBTORS ARE MAKING THE STATEMENTS AND PROVIDING THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFICALLY NOTED.  ALTHOUGH THE DEBTORS MAY SUBSEQUENTLY UPDATE THE INFORMATION IN THIS DISCLOSURE STATEMENT, THE DEBTORS HAVE NO AFFIRMATIVE DUTY TO DO SO.  HOLDERS OF CLAIMS AND INTERESTS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT INFER THAT, AT THE TIME OF THEIR REVIEW, THE FACTS SET FORTH HEREIN HAVE NOT CHANGED SINCE THE DISCLOSURE STATEMENT WAS FILED.  HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN MUST RELY ON THEIR OWN EVALUATION OF THE PLAN AND THEIR OWN ANALYSES OF THE TERMS OF THE PLAN, INCLUDING, WITHOUT LIMITATION, ANY RISK FACTORS CITED HEREIN, IN DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN.

THE DEBTORS HAVE NOT AUTHORIZED ANY ENTITY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT.  THE DEBTORS HAVE NOT AUTHORIZED ANY REPRESENTATIONS CONCERNING THE DEBTORS OR THE VALUE OF THE DEBTORS' ASSETS OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.

PRIOR TO DECIDING WHETHER AND HOW TO VOTE ON THE PLAN, EACH HOLDER OF A CLAIM IN A VOTING CLASS SHOULD CONSIDER CAREFULLY ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS DESCRIBED IN GREATER DETAIL IN SECTION VII HEREIN, "PLAN-RELATED RISK FACTORS AND ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN."

HTRUST/2336303.3/067837

ALL EXHIBITS TO THIS DISCLOSURE STATEMENT ARE INCORPORATED INTO AND MADE A PART OF THIS DISCLOSURE STATEMENT AS IF SET FORTH IN FULL HEREIN.

A.      PURPOSE AND EFFECT OF THE PLAN

The Plan provides for the liquidation of all of the Creditor Trust Assets by the Creditor Trust. The Creditor Trust Proceeds will be used to make all distributions pursuant to the terms of the Plan. The Creditor Trust, as applicable, may pursue certain Causes of Action to collect additional Cash for distribution pursuant to the terms of the Plan.

B.      PRE-PETITION BACKGROUND

Holdings is a corporation duly organized and existing under New York law. Fabrikant is a member-managed limited liability corporation duly organized and existing under Delaware law. Holdings is the sole member of Fabrikant. Holdings is a wholly owned subsidiary of Tara Jewels Ltd., a publically traded company in India.

The Debtors' primary business was the importation of sale and diamond and gemstone jewelry. The Debtors also designed and produced jewelry and merchandise under license from third parties, which they in turn sold to large retailers for resale.

Prior to the cessation of their business, two of the Debtors' employees left the Debtors to work for a competitor, Goldstar Jewellery LLC ("Goldstar"). However, prior to leaving the Debtors, among other things, those employees converted the Debtors' intellectual proprietary designs to their own use and have continued to use those designs at Goldstar while actively soliciting the Debtors' customers. On February 11, 2019, Fabrikant commenced an action against, among others, Goldstar and the Debtors' former employees in the Supreme Court of the State of New York for the County of New York, entitled *Tara Jewels LLC v. Jeffrey Shlakman, Tina Moretti, Michael Lerche, Goldstar Jewellery LLC, Brahma Designs, Inc., and Monique Lhuillier Licensing, LLC*, Index Number 656141-2018 (the "Goldstar Action"). The Goldstar Action has been removed to the Bankruptcy Court and remains pending.

In addition to the Debtors' loss of their main licensing agreements and key customers based upon the actions of Goldstar and the Debtors' former employees, the Debtors' parent company, TJL, entered into an Indian insolvency proceeding in 2018. Prior to TJL's insolvency, the Debtors and TJL worked closely together to fulfill customer orders and operate the Debtors' business. With declining sales and no support from TJL forthcoming, the Debtors were forced to cease their operations.

On May 30, 2019, Richard T. Faughnan ("Faughnan"), a managing director of Kroll, a division of Duff & Phelps, was appointed by the Board of Directors of both Debtors as each Debtor's Chief Restructuring Officer. The *Declaration of Richard T. Faughnan Under Local Rule 1007-2 in Connection with Chapter 11 Filing* (ECF Doc. No. 14) (the "Debtors' Rule 1007-2 Affidavit") sets forth that Faughnan was retained, in part, to perform an investigation into the Debtors' financial affairs and to determine whether, and to what extent, any improper conduct or

HTRUST/2336303.3/067837

wrongdoing was committed by the Debtors' directors, officers and employees.

## C.    OVERVIEW OF CHAPTER 11

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code, although individuals may also file under chapter 11.  In addition to permitting debtor rehabilitation, chapter 11 promotes equality of treatment for similarly situated creditors and similarly situated interest holders, subject to the priority of distributions prescribed by the Bankruptcy Code.

The commencement of a chapter 11 case creates an estate that comprises all of the legal and equitable interests of the debtor as of the bankruptcy petition date.  Consummating a plan is the principal objective of a chapter 11 case.  The Bankruptcy Court's confirmation of a plan binds the debtor, any person acquiring property under the plan, any creditor or interest holder of a debtor, and any other person or entity as may be ordered by the Bankruptcy Court in accordance with the applicable provisions of the Bankruptcy Code.  Subject to certain limited exceptions, the order issued by the Bankruptcy Court confirming a plan provides for the treatment of the debtor's liabilities in accordance with the terms of the confirmed plan.

Prior to soliciting acceptances of a proposed chapter 11 plan, Bankruptcy Code §1125 requires a debtor to prepare a disclosure statement containing information of a kind, and in sufficient detail, to enable a hypothetical reasonable creditor or investor to make an informed judgment regarding acceptance of the chapter 11 plan.  This Disclosure Statement is being submitted in accordance with the requirements of Bankruptcy Code §1125.

## D.    CONFIRMATION AND CONSUMMATION OF THE PLAN

It will be a condition to Confirmation of the Plan that all provisions, terms, and conditions of the Plan are approved in the Confirmation Order unless otherwise satisfied or waived pursuant to the provisions of Article IX of the Plan.  The Plan will be consummated on the Effective Date, when all of the Debtors' right, title, and interest in the Creditor Trust Assets, including, without limitation, all Avoidance Actions and Causes of Action shall transfer to the Creditor Trust.  The Creditor Trust will liquidate the Creditor Trust Assets and, at the Creditor Trustee's discretion, may commence Avoidance Actions or Cause of Actions, to make distributions to Holders of Allowed Claims.

## E.    RISK FACTORS

PRIOR TO DECIDING WHETHER AND HOW TO VOTE ON THE PLAN, EACH HOLDER OF A CLAIM IN A VOTING CLASS SHOULD CONSIDER CAREFULLY ALL OF THE INFORMATION IN THE DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS DESCRIBED IN SECTION VII HEREIN ENTITLED, "PLAN-RELATED RISK FACTORS AND ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN."

## II.    BACKGROUND OF THE CHAPTER 11 CASES

A.    BANKRUPTCY PETITION

On June 21, 2019, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

B.    MOTIONS AND ORDERS

During the Chapter 11 Cases, the Debtors filed additional motions and applications.

### 1.    Motion to Extend Deadline to File Schedules and Statements

On July 1, 2019, the Debtors Filed motions for an order extending the Debtors' deadline to file their Schedules from July 8, 2019 to and including August 19, 2019, pursuant to Bankruptcy Rules 1007(c), 2002(d) and 9006 (ECF Docs. No. 13 (Case No. 19-12060 (SCC)) and 11 (Case No. 19-12061 (SCC)) (the "Motion for Extension").  On August 7, 2019, the Court granted the Debtors' Motion for Extension (ECF Doc. No. 23 (Case No. 19-12060 (SCC))).

### 2.    Motion to Maintain Existing Bank Accounts and Business Forms

On July 1, 2019, the Debtors Filed motions seeking authority to maintain the Debtors' existing pre-Petition Date bank accounts at KeyBank National Association ("KeyBank") and business forms pursuant to Bankruptcy Code §§105(a) and 363(c) (ECF Docs. No. 12 (Case No. 19-12060 (SCC)) and 10 (Case No. 19-12061 (SCC)) (the "Bank Account Motion").  On August 7, 2019, the Court granted the Debtors' Bank Accounts Motion (ECF Doc. No. 22 (Case No. 19-12060 (SCC))).

### 3.    Motion to Jointly Administer the Debtors' Chapter 11 Cases

On July 1, 2019, the Debtors Filed motions seeking entry of an order directing the joint administration of their Chapter 11 Cases for procedural purposes only, pursuant to Bankruptcy Rule 1015(b) (ECF Docs. No. 11 (Case No. 19-12060 (SCC)) and 9 (Case No. 19-12061 (SCC)) (the "Motion for Joint Administration").  On August 7, 2019, the Court granted the Debtors Motion for Joint Administration of their Chapter 11 Cases (ECF Docs. No. 21 (Case No. 19-12060 (SCC)) and 19 (Case No. 19-12060 (SCC))).

C.    NO APPOINTMET OF A CREDITORS' COMMITTEE

To date, the Office of the United States Trustee for Region 2 has not appointed an unsecured creditors' committee in the Chapter 11 Case.

D.    CLAIMS PROCESS AND CLAIMS BAR DATE

In chapter 11, claims against a debtor are established either as a result of being listed in a debtor's schedules of assets and liabilities or through assertion by a creditor in a timely filed

HTRUST/2336303.3/067837

proof of claim.  Claims asserted by a creditor are either allowed or disallowed.  If allowed, a claim would be recognized and treated pursuant to a plan; if disallowed, a creditor would have no right to obtain any recover on or otherwise enforce the claim against the debtor.

1.   Section 341(a) Meeting of Creditors

On September 10, 2019 the United States Trustee conducted the Section 341(a) Meeting of Creditors in the Chapter 11 cases.

2.   Schedules and Statements

On August 19, 2019 and August 20, 2019, respectively, the Debtors Filed with the Bankruptcy Court their *Global Notes Regarding Debtors' Bankruptcy Schedules and Statement*, Summary of Assets and Liabilities and Certain Statistical Information (Form 106Sum), Schedules A/B, Schedule, D, Schedules E/F, Schedule G, and Schedule H, Statement of Financial Affairs, and Declaration Under Penalty of Perjury for Non-Individual Debtors (ECF Doc. Nos. 24 (Case No. 19-12060 (SCC)) and 21 (Case No. 19-12061 (SCC)) (collectively, the "Schedules").

Copies of the Schedules are available with the Clerk of the Bankruptcy Court.  The Debtors have reserved their rights to amend the Schedules during the Chapter 11 Cases.

3.   General and Governmental Bar Dates

On September 27, 2019, the Court entered an Order Establishing Deadlines and Procedures for Filing Proofs of Claim and Approving Forms and Manner of Notice Thereof (ECF Doc. No. 33).  All Proofs of Claims must be Filed in writing or electronically on the Court's website at www.nysb.uscourts.gov so that it is received on or before November 7, 2019 (the "General Bar Date").  All Proofs of Claim by a governmental unit must be Filed in writing or electronically on the Court's website at www.nysb.uscourts.gov so that it is received on or before December 18, 2019 (the "Governmental Claims Bar Date").

### III.   SUMMARY OF PLAN

A.   ADMINISTRATIVE AND PRIORITY TAX CLAIMS

1.   Administrative Claims

(a)   General Administrative Claims

Except as otherwise provided herein and subject to Bankruptcy Code §§328, 330(a) and 331, each Holder of an Allowed General Administrative Claim will be paid the full amount of such Allowed Claim in Cash: (a) on or as soon as reasonably practicable after the Effective Date; (b) if such Claim is Allowed after the Effective Date, on or as soon as practicable after the date such Claim is Allowed; (c) upon such other terms as may be agreed upon by such Holder and the Creditor Trust; or (d) as otherwise ordered by the Bankruptcy Court.

8

Except as otherwise provided in this Article II.A, unless previously Filed, requests for payment of General Administrative Claims must be Filed and served prior to the General Administrative Claims Bar Date.  Holders of General Administrative Claims that do not File and serve such a request by the applicable General Administrative Claims Bar Date shall be forever barred, estopped and enjoined from asserting such General Administrative Claims against the Debtors, their Estates and the Creditor Trust and such General Administrative Claims shall be deemed discharged as of the Effective Date.  Objections to such requests must be Filed and served on the Debtors, the Creditor Trust and the requesting party within thirty (30) days after the General Administrative Claims Bar Date.

(b)     Fee Claims

Retained Professionals, including without limitation other entities asserting a Fee Claim for services rendered before the Confirmation Date, must File and serve on the Debtors, the Creditor Trust, the United States Trustee, and such other Entities who are designated by the Bankruptcy Rules or any order of the Bankruptcy Court an application for final allowance of such Fee Claim no later than sixty (60) days after the Effective Date.  Objections to any Fee Claim must be Filed and served on the Debtors, the Creditor Trustee, the United States Trustee, and the requesting party in accordance with the notice of the hearing on such Fee Claim.

2.     Priority Tax Claims

Each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date shall receive, as soon as reasonably practicable after the Effective Date, on account of such Claim: (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (2) Cash in an amount agreed to by the Creditor Trust and such Holder; provided, however, that such parties may further agree for the payment of such Allowed Priority Tax Claim at a later date; or (3) at the option of the Creditor Trust, Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period not more than five (5) years after the Petition Date, pursuant to Bankruptcy Code §1129(a)(9)(C).

3.     Fees Payable to the United States Trustee

The Creditor Trust shall pay all United States Trustee quarterly fees under 28 U.S.C. §1930(a)(6), plus interest due and payable under 31 U.S.C. §3717, on all disbursements made by the Debtors, including the transfer of assets to the Creditor Trust, until the entry of a Final Order closing the Chapter 11 Cases, dismissal of the Chapter 11 Cases, or conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.

B.     CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

1.     Administrative and Priority Tax Claims

In accordance with Bankruptcy Code §1123(a)(1), Administrative Claims and Priority

HTRUST/2336303.3/067837

Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III.C, hereof.

    2.    <u>Summary of Classification and Treatment of Classified Claims and Interests</u>

The categories of Claims listed below classify Claims for all purposes, including voting, Confirmation and distributions pursuant hereto and pursuant to Bankruptcy Code §§1122 and 1123(a)(1).  The Plan deems a Claim to be classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class.  A Claim or an Interest is in a particular Class only to the extent that any such Claim is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

The classification and treatment of Claims and Interests against the Debtors pursuant to the Plan, is as follows:

| Class | Claim | Estimated Allowed Claims in Class | Status | Voting Rights | Anticipated Recovery[2] |
|---|---|---|---|---|---|
| 1 | Priority (Non-Tax) Claims | $0.00 | Unimpaired | Deemed to Accept | 100% |
| 2 | Secured Claims | $20,841,286.00 | Impaired | Entitled to Vote | Unknown |
| 3 | General Unsecured Claims | Unknown | Impaired | Entitled to Vote | Unknown |
| 4 | Interests | N/A | Impaired | Entitled to Vote | Unknown |

    3.    <u>Classification and Treatment of Claims Against the Debtors</u>

<u>Class 1 – Priority (Non-Tax Claims</u>

    (i)    Classification: Class 1 consists of all Priority Claims against the Debtors which are not tax claims.

    (ii)    Treatment: The legal, equitable and contractual rights of the Holders of Allowed Class 1 Claims are unaltered.  Unless otherwise agreed to by Holders of Allowed Class 1 Claims and the Creditor Trust, each Holder of an Allowed Class 1 Claim shall receive, in full and final satisfaction of such Allowed Class 1 claim, payment of the Allowed Class 1 Claim in full in Cash on or as soon as reasonably practicable after the Effective Date.

---

[2] Due to the nature of the Creditor Trust Assets, the Debtors cannot state with full certainty what recovery will be available to Holders of Claims as any Sale of the Creditor Trust Assets yet to occur and recoveries on any Causes of Action are speculative.  In addition, the Debtors cannot know with certainty, at this time, the number or size of Claims in Classes 3 and 4 that will ultimately be Allowed.

HTRUST/2336303.3/067837

    (iii)    Voting: Class 1 is Unimpaired, and Holders of Class 1 Claims are conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code §1126(f). Therefore, Holders of Class 1 Claims are not entitled to vote to accept or reject the Plan; provided, however, that all Class 1 Claims shall be subject to becoming Allowed Claims under the provisions of the Plan, including Article VIII hereof.

## Class 2 – Secured Claims

    (i)    Classification: Class 2 Claims consists of the Allowed Secured Claim against the Debtors.

    (ii)    Treatment: The Secured Claim of KeyBank is Allowed in the total amount of $20,841,286.00, consisting of $19,833,441.04 in outstanding principal, $990,206.68 in accrued and unpaid interests, and $17,638.28 in unreimbursed costs and expenses. The Allowed Secured Claim of KeyBank is not subject to any offsets, recoupments, defenses, Avoidance Actions or other Causes of Action. Without limiting the generality of the foregoing sentence, the Allowed Secured Claim of KeyBank shall not be subject to any charge, lien, assessment or claim under Bankruptcy Code §506(c). KeyBank is not required to File a Proof of Claim with respect to its Allowed Secured Claim. The Holder of the Allowed Class 2 Claim, KeyBank, shall receive payment of such Allowed Class 2 Claim, in Cash, as soon as reasonably practicable after the liquidation by the Creditor Trust of the Creditor Trust Assets which are subject to the Lien of KeyBank. All Creditor Trust Assets, which may be subject to a security interest perfected by the filing of a financing statement under the Uniform Commercial Code as in effect in the State of New York, are subject to a first priority, duly perfected, valid, binding, and enforceable security interest in favor of KeyBank securing the Allowed Secured Claim of KeyBank, which security interest is not subject to any offsets, recoupments, defenses, Avoidance Actions or other Causes of Action. Any unsecured deficiency Claim of KeyBank shall be treated as an Allowed Class 3 Claim.

    (iii)    Voting: Class 2 is Impaired, and therefore KeyBank is entitled to vote to accept or reject the Plan.

## Class 3 – General Unsecured Claims

    (i)    Classification: Class 3 consists of all General Unsecured Claims held against the Debtors.

HTRUST/2336303.3/067837

(ii)     Treatment: Holders of Allowed General Unsecured Claims will receive, in full and final satisfaction, settlement, and discharge and in exchange for each Allowed General Unsecured Claim, their Pro Rata Share of Creditor Trust Proceeds after payment of the Allowed Claims in Classes 1 and 2.

(iii)     Voting: Class 3 is Impaired, and therefore Holders of Class 3 Claims are entitled to vote to accept or reject the Plan.

Class 4 – Interests in Property of the Estates

(i)     Classification: Class 4 consists of all of the Debtors' Interests in property of the Estate.

(ii)     Treatment: To the extent that any Creditor Trust Proceeds are available after full payment of all statutory fees, Administrative Claims, Priority Tax Claims, and Claims in Classes 1, 2, and 3, the Holders of Class 4 Interests shall receive such remaining funds.

(iii)     Voting: Class 4 is Impaired, and the Holders of Class 4 Interests are entitled to vote to accept or reject the Plan.

4.     Special Provision Governing Unimpaired Claims

Except as otherwise provided herein, nothing in the Plan shall affect the Debtors' or the Creditor Trust's rights with respect to any Unimpaired Claims, including all rights with respect to legal and equitable defenses to or setoffs or recoupment against any such Unimpaired Claims.

C.     ACCEPTANCE OR REJECTION OF THE PLAN

1.     Presumed Acceptance of Plan

Class 1 is Unimpaired under the Plan and, therefore, is conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code §1126(f).

2.     Voting Classes

Classes 2, 3, and 4 are Impaired under the Plan, and Holders of Class 2 and Class 3 Claims and Class 4 Interests as of the Record Date shall be entitled to vote to accept or reject the Plan.

3.     Acceptance by Impaired Classes of Claims

Pursuant to Bankruptcy Code §1126(c), and except as otherwise provided in Bankruptcy Code §1126(e), an Impaired Class of Claims entitled to vote to accept or reject the Plan has accepted the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in

12

number of the Allowed Claims in such Class actually voting have voted to accept the Plan.

    4.    <u>Substantive Consolidation of Debtors' Estates</u>

The Plan shall serve as a motion by the Debtors seeking entry of an order substantively consolidating each of the Estates into a single consolidated Estate solely for the limited purposes of voting, confirmation and distribution.  For the avoidance of doubt, the Plan shall not serve as a motion by the Debtors seeking entry of an order substantively consolidating the Debtors for any other purposes.  Moreover, any alleged defaults under any applicable agreement with the Debtors, the Reorganized Debtors, or their respective affiliates arising from substantive consolidation under the plan shall be deemed cured as of the Effective Date.

D.    MEANS FOR IMPLEMENTATION OF THE PLAN

    1.    <u>Source of Funds</u>

The payments due under the Plan will be paid from the Creditor Trust Proceeds.

    2.    <u>Establishment of Creditor Trust</u>

    (a)    Appointment of Creditor Trustee.  The Confirmation Order shall provide for the appointment of the Creditor Trustee.  The Creditor Trustee shall be deemed the Creditor Trust's exclusive representative in accordance with Bankruptcy Code §1123 and shall have all powers, authority and responsibilities specified under Bankruptcy Code §§704 and 1106.

    (b)    Bond.  The Creditor Trustee shall serve without a bond.  The Creditor Trust Oversight committee may, at its option, require the Creditor Trustee to obtain a bond, provided that there is sufficient Cash available in the Creditor Trust to purchase a bond.

    (c)    Creditor Trust Oversight Committee.  On or before the Effective Date, the Creditor Trust Oversight Committee shall be appointed and shall consist of (a) KeyBank and (b) the Debtors' two (2) largest Holders of General Unsecured Claims (excluding any such Holder who is an Insider of either Debtor) willing to serve on the Creditor Trust Oversight Committee.  The Creditor Trust Oversight Committee shall have the authority specified in the Creditor Trust Agreement.  The Creditor Trustee shall consult with and provide information to the Creditor Trust Oversight Committee with respect to any material action to be taken or not to be taken by the Creditor Trust, and such other matters designated by the Creditor Trust Oversight Committee.

    (d)    Governance.  The Creditor Trust shall be governed by the Creditor Trust Agreement, subject to the oversight of the Creditor Trust Oversight Committee.

HTRUST/2336303.3/067837

(e)    Succession Matters.  In the event the Creditor Trustee dies, is terminated, or resigns for any reason, the Creditor Trust Oversight Committee shall designate a successor.  If the Creditor Trust Oversight Committee cannot agree on a successor Creditor Trustee, each of the members of the Creditor Trust Oversight Committee may nominate a successor Creditor Trustee and request by motion on notice required by the Bankruptcy Rules that the Bankruptcy Court appoint a successor Creditor Trustee from such nominees.  Such successor Creditor Trustee shall be deemed to succeed the Creditor Trustee in all respects, including, but not limited to, all litigation and other matters related to prosecution of the Causes of Action, without need for further order of the Bankruptcy Court.  In the event of resignation or removal of the Creditor Trustee, the departing Creditor Trustee shall promptly (a) execute and deliver such documents, instruments and other writings as reasonably requested by the successor Creditor Trustee or as ordered by the Bankruptcy Court; (b) turn over to the successor Creditor Trustee all property of the Creditor Trust in his or her possession, custody and control, including, but not limited to all funds held in bank accounts, and all files, books and records and other documents and information related to the Creditor Trust Assets and to the Debtors; and (c) otherwise assist and cooperate in affecting the assumption of his or her obligations and functions by the successor Creditor Trustee. The successor Creditor Trustee may, in his or her discretion, retain such professionals as he or she deems necessary, including the professionals of the departing Creditor Trustee.

(f)    Funding of Creditor Trust.  The Creditor Trust shall be funded by the Creditor Trust Assets.

(g)    Transfer of Estates Assets to Creditor Trust.  On the Effective Date, the Debtors shall transfer to the Creditor Trust all of their rights, titles, and interests in and to the Creditor Trust Assets, including, without limitation, all Avoidance Actions and Causes of Action.  For avoidance of doubt, the Causes of Action shall be deemed to have been automatically assigned and transferred to the Creditor Trust on the Effective Date without the need for further conveyance or assignment document.  Upon the Effective Date, the Creditor Trust shall be deemed to be substituted for, without further order of any court, the plaintiff in all Causes of Action.  Any recoveries on account of the Causes of Action transferred to the Creditor Trust shall be distributed in accordance with the Plan.

(h)    Purpose of Creditor Trust.  The Creditor Trust shall be established for the sole purpose of liquidating the Creditor Trust Assets and distributing the proceeds thereof in accordance with Treasury Regulation section 301.7701-4(d) and Revenue Procedure 94-45, with no objective to continue or engage in the conduct of a trade or business.

14

(i)     Federal Income Tax Treatment of Creditor Trust.  The Creditor Trust is intended to qualify as a liquidating trust for U.S. federal income tax purposes.  In general, a liquidating trust is not a separate taxable entity for U.S. federal income tax purposes, but is instead treated as a grantor trust, i.e., a passthrough entity.  All parties must treat the transfer of the Creditor Trust Assets to the Creditor Trust as a transfer of such assets directly to the Creditor Trust beneficiaries, followed by the transfer of such assets by the beneficiaries to the Creditor Trust.  Consistent therewith, all parties must treat the Creditor Trust as a grantor trust of which the Creditor Trust beneficiaries are the owners and grantors.  The Creditor Trust beneficiaries (and any subsequent holders of interests in the Creditor Trust) generally should be treated for U.S. federal income tax purposes as the direct owners of an undivided interest in the Creditor Trust Assets.  The Creditor Trustee shall determine the fair market value of the Creditor Trust Assets as soon as possible after the Effective Date, and all parties must consistently use this valuation for all U.S. federal income tax purposes.

(j)     Indemnification.  The Creditor Trustee and the Creditor Trust Oversight Committee, and each of their respective designees, employees or professionals, or any duly designated agent or representative of the Creditor Trustee or Creditor Trust Oversight Committee, shall not be liable for any act or omission taken or omitted to be taken in their respective capacities other than for acts or omissions resulting from willful misconduct, gross negligence, or fraud as determined by Final Order of the Bankruptcy Court.  The Creditor Trust, Creditor Trustee and the Creditor Trust Oversight Committee may, in connection with the performance of their respective functions, and in their respective sole and absolute discretion, consult with attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such attorneys, accountants, financial advisors and agents, or any Final Order of the Bankruptcy Court.  Notwithstanding such authority, the Creditor Trust, Creditor Trustee and Creditor Trust Oversight Committee shall not be under any obligation to consult with attorneys, accountants, financial advisors or agents, and their determination not to do so shall not result in the imposition of liability, unless such determination is based on willful misconduct, gross negligence or fraud as determined by Final Order of the Bankruptcy Court.  The Creditor Trust shall indemnify and hold harmless the Creditor Trustee and the Creditor Trust Oversight Committee and each of their respective designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such) from and against all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to such actions or omissions, or consequences of their actions or

15

omissions with respect or related to the performance of their duties or the implementation or administration of this Plan; provided however, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

3.   Powers and Obligations of the Creditor Trust and Creditor Trustee

(a)   On the Effective Date, the Creditor Trustee shall succeed to all of the rights of the Debtors with respect to the Creditor Trust Assets necessary to protect, conserve, and liquidate all Creditor Trust Assets, including, without limitation, control over (including the right to waive) all attorney-client privileges, work-product privileges, accountant-client privileges and any other evidentiary privileges relating to the Creditor Trust Assets that, prior to the Effective Date, belonged to the Debtors pursuant to applicable law.  The powers and duties of the Creditor Trustee shall include, without further order of the Court, except where expressly stated otherwise, the rights:

i.   to invest Cash in accordance with Bankruptcy Code §345, and withdraw and make distributions of Cash to Holders of Claims and pay taxes and other obligations incurred by the Creditor Trust in accordance with the Plan;

ii.   to receive, manage, invest, supervise, and protect the Creditor Trust Assets, including paying taxes or other obligations incurred in connection with administering the Creditor Trust Assets;

iii.   subject to the approval of the Creditor Trust Oversight Committee, to engage attorneys, consultants, agents, employees and all professional persons, to assist the Creditor Trust with respect to the Creditor Trust's responsibilities;

iv.   subject to the approval of the Creditor Trust Oversight Committee, to pay the fees and expenses for the attorneys, consultants, agents, employees and professional persons engaged by the Creditor Trust and the Creditor Trust Oversight Committee and to pay all other expenses in connection with administering the Creditor Trust Assets;

v.   to execute and deliver all documents, and take all actions, necessary to consummate the Plan and the responsibilities of the Creditor Trust;

vi.   move the Bankruptcy Court to establish a general bar date for the filing of Claims against the Debtors' Estates, if such a date has not already been established;

HTRUST/2336303.3/067837

vii.   subject to the approval of the Creditor Trust Oversight Committee, to dispose of, and deliver title to others of, or otherwise realize the value of, Creditor Trust Assets to the extent that such action creates Creditor Trust Proceeds;

viii.   subject to Article VIII of the Plan, to object to Claims against the Debtors;

ix.   subject to Article X of the Plan, to compromise and settle Claims by and against the Debtors;

x.   to act on behalf of the Creditor Trust in all adversary proceedings and contested matters (including, without limitation, any Avoidance Actions and Causes of Action) assigned to the Creditor Trust, then pending or that can be commenced in the Bankruptcy Court and in all actions and proceedings pending or commenced elsewhere, and to settle, retain, enforce, or dispute any adversary proceedings or contested matters (including, without limitation, any Causes of Action) and otherwise pursue actions involving Creditor Trust Assets that could arise or be asserted at any time under the Bankruptcy Code or otherwise, unless otherwise specifically waived or relinquished in the Plan, provided, however, that settlements by the Creditor Trust of Causes of Action shall be subject to the approval of the Creditor Trust Oversight Committee. The Creditor Trust shall be authorized to enter into settlements of Causes of Action without a hearing or Court approval;

xi.   with the approval of the Creditor Trust Oversight Committee, abandon any Creditor Trust Assets without the need for approval of the Court, and upon such abandonment, such Assets shall cease to be Creditor Trust Assets and will be transferred back to the Debtors; and

xii.   to the extent the Creditor Trust retains any Cash, after satisfaction of all of its obligations pursuant to the Plan, to transfer such remaining Cash to the Debtors.

4.   <u>Carve-Out Amount and Adequate Protection to KeyBank</u>

As adequate protection for the use of the Carve-Out Amount by the Creditor Trustee, KeyBank is hereby granted: (a) pursuant to Bankruptcy Code §361(2), first priority, duly perfected, valid, binding, and enforceable Liens upon and security interests in all Creditor Trust Assets, as replacement Liens and security interests securing the Allowed Class 2 Claim of KeyBank to the extent of the amount of the Carve-Out Amount used by the Creditor Trustee; and (b) to the extent of the amount of the Carve-Out Amount used by the Creditor Trustee, an

17

Allowed Administrative Claim under Bankruptcy Code §503(b)(1) with superpriority status pursuant to Bankruptcy Code §507(b). The replacement Liens and security interests granted to KeyBank pursuant hereto are automatically perfected by operation of law effective as of the Effective Date without further action by KeyBank. KeyBank may, but shall not be required to, file any Uniform Commercial Code financing statements and record any additional documents in any jurisdiction or take any other or further action to validate or perfect the Liens and security interests granted to KeyBank pursuant hereto. If KeyBank deems it necessary or convenient, the Creditor Trustee shall execute and deliver to KeyBank, any such additional documents.

5.     General Release of KeyBank

In consideration of the Carve-Out Amount and KeyBank's other agreements set forth herein, effective as of the Effective Date, each Debtor, on behalf of itself and its Estate (collectively, the "Releasors"), hereby unconditionally remises, releases, and forever discharges KeyBank, its past and present officers, directors, shareholders, agents, parent corporations, subsidiaries, affiliates, trustees, administrators, attorneys, predecessors, successors and assigns, and the heirs, executors, administrators, and successors and assigns of any such person, as releases (collectively, the "Releasees"), of and from any and all manner of actions, Causes of Action, Avoidance Actions, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, promises, warranties, guaranties, representations, liens, mechanics' liens, judgments, claims, counterclaims, crossclaims, defenses, and/or demands whatsoever, including claims for contribution and/or indemnity, whether now known or unknown, past or present, asserted or unasserted, contingent or liquidated, at law or in equity, if any (collectively, the "Released Claims"), which any of the Releasors ever had, may have, or now have against any of the Releasees, for or by reason of any cause, matter, or thing whatsoever, arising from the beginning of time to the Effective Date, including, without limitation, any and all Released Claims that in any way arise out of, are connected to, are related to, or are in any manner incidental to the dealings or relationships between the Releasors and Releasees related to the Secured Claim, the transactions contemplated thereby, or any actions or omissions in connection therewith.

E.     TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

1.     Assumptions and Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, and solely with regard to any such executory contracts or unexpired leases entered into by the Debtors, all Executory Contracts and Unexpired Leases shall be deemed automatically rejected in accordance with the provisions of Bankruptcy Code §§365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory or Unexpired Lease:

(a)     has previously been assumed by the Debtors by Final Order of the Bankruptcy Court;

(b)     has been assumed by the Debtors by order of the Bankruptcy Court as of the Effective Date which order becomes a Final Order after the Effective Date;

HTRUST/2336303.3/067837

(c)     is the subject of a motion to assume or reject pending as of the Effective Date; or

(d)     is otherwise assumed pursuant to the terms herein.

2.     Claims Based on Rejection of Executory Contracts and Unexpired Leases

Notwithstanding anything to the contrary provided herein, all Proofs of Claim arising from the rejection (if any) of Executory Contracts or Unexpired Leases must be Filed within the later of: (a) thirty (30) days after the entry of an order of the Bankruptcy Court approving any such rejection; and (b) the first Business Day that is thirty (30) days following the Effective Date.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claim are not timely Filed will be forever barred from assertion against the Debtors, their Estates and property of the Creditor Trust, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.  All such Claims shall, as of the Effective Date, be subject to Article X.E of the Plan, hereof.

Notwithstanding anything herein to the contrary, nothing in this Plan is intended to extend the deadline by which Proofs of Claim arising from the rejection (if any) of Executory Contracts or Unexpired Leases was required to be previously Filed.

3.     Modifications, Amendments, Restatements or Other Agreements

Unless otherwise provided by the Plan, each rejected Executory Contract or Unexpired Lease shall include all modifications, amendments, restatements or other agreements that in any manner affect such Executory Contract or Unexpired Lease, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interest.

Amendments, restatements or other modifications to Executory Contracts or Unexpired Leases executed by the Debtors during the pendency of the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority or amount of any Claim arising in connection therewith.

4.     Reservation of Rights

Nothing contained in the Plan or the exhibits to the Plan shall constitute an admission by the Debtors or the Creditor Trust that any such contract or lease is an Executory Contract or Unexpired Lease or that the Debtors or the Creditor Trust has any liability thereunder. Additionally, the Debtors and the Creditor Trust reserve all of their defenses and rights with respect to any rejection damages Claims filed by an Entity with respect to an Executory Contract or Unexpired Lease.

F.     PROVISIONS FOR GOVERNING DISTRIBUTION

1.     Distributions for Allowed Claims

HTRUST/2336303.3/067837

Except as otherwise provided herein or as may be ordered by the Bankruptcy Court, and subject to the establishment of a Disputed Claims Reserve, all distributions with respect to Claims that are Allowed Claims as of the Effective Date shall be made by the Creditor Trust, as set forth in the Plan.  The Creditor Trust shall make distributions on the Effective Date or as soon as reasonably practicable thereafter to Holders of Allowed Administrative Claims, Fees of the type described in 28 U.S.C. § 1930(a)(6), including the fees of the United States Trustee, and any applicable interest, Allowed Fee Claims, and all Allowed Claims in Classes 1, 2 and 3.  The Creditor Trust shall make further distributions to Holders of Claims that subsequently become Allowed Claims pursuant to the Plan.

2.      Distributions on Account of Claims Allowed After the Effective Date

(a)      Payments and Distributions on Disputed Claims

Notwithstanding any provision herein to the contrary, except as otherwise agreed by the Creditor Trust, no partial payments and no partial distributions will be made with respect to a Disputed Claim until the resolution of any such disputes by settlement or Final Order.  On the first Business Day which is twenty (20) calendar days after the end of the calendar quarter in which a Disputed Claim becomes an Allowed Claim, the Holder of such Allowed Claim will receive such payments and distributions to which that Holder is then entitled under the Plan.  In the event Claims require adjudication or other resolution, the Creditor Trust reserves the right to, or shall upon an order of the Bankruptcy Court, establish appropriate reserves for potential payment of any such Claims.

(b)      Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to any Disputed Claim until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

3.      Delivery and Distributions and Undeliverable or Unclaimed Distributions

(a)      Delivery of Distributions in General

Except as otherwise provided herein, the Creditor Trust, shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtors' books and records as of the date of any such distribution; provided, however, that if such Holder Files a Proof of Claim, the address identified by the Proof of Claim shall be the address for such distribution, and the manner of delivery for such distributions shall be determined at the discretion of the Creditor Trust.  Nothing herein shall require or be deemed to require the Creditor Trust to attempt to locate any Holder of an Allowed Claim.  Distributions shall be made in accordance with the provisions of the Plan and may be made in one or more payments or deliveries.

20

(b)      Minimum Distributions

Notwithstanding anything herein to the contrary, and unless the proceeds of the Sales of the Creditor Trust Assets yield funds sufficient to pay Class 3 Claims in full, the Creditor Trust shall not be required to make distributions of less than $25.00, and shall not be required to make partial distributions or payments of fractions of dollars.  Whenever any payment or distribution of a fraction of a dollar under the Plan would otherwise be called for, the actual payment or distribution will reflect a rounding of such fraction to the nearest whole dollar, with half dollars or less being rounded down.  Any Holder of an Allowed Claim whose aggregate distribution under this Plan is less than $25.00 shall forfeit, at the option of the Creditor Trust, such amount to, and such amount shall vest in, the Creditor Trust for distribution in accordance with the terms of this Plan.

In the event that (a) all Allowed Claims, including Administrative Claims, have been paid in full, or (b) only *de minimis* assets remain in the Creditor Trust, all undeliverable distributions or unclaimed property shall revert back to the Debtors.

(c)      Undeliverable Distributions and Unclaimed Property

If any distribution is returned as undeliverable, the Creditor Trust may, in its sole discretion, make such efforts to determine the current address of the Holder of the Claim with respect to which the distribution was made, but no distributions to any Holder of an Allowed Claim will be made until the Creditor Trust has determined the current address of the Holder of such Allowed Claim, at which time the distribution will be made without interest.  The Creditor Trust shall have the discretion to determine how to make distributions in the most efficient and cost-effective manner.

Amounts in respect of any undeliverable distributions made by the Creditor Trust shall be returned to, and held in trust by, the Creditor Trust, until the distributions are claimed, or are deemed to be Unclaimed Property upon the expiration of six (6) months from the date of the return of the undeliverable distribution.  Unclaimed Property shall be utilized by the Creditor Trust to make additional distributions in accordance with the provisions of the Plan.  After the final distribution is made under the Plan, or after all Allowed Claims (including Allowed Administrative Claims) have been paid in full, with interest, any Unclaimed Property shall revert to the Debtors.

4.      Compliance with Tax Requirements/Allocations

In connection with the Plan, to the extent applicable, the Creditor Trust shall comply with all tax withholding and reporting requirements imposed upon it by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Creditor Trust shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including segregating or reserving a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding or other taxes, withholding

21

distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate.  The Creditor Trust reserves the right to allocate all distributions made under the Plan in compliance with all applicable liens and encumbrances.  For tax purposes, distributions in full or partial satisfaction of Allowed Claims shall be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claims.

5.      Timing and Calculation of Amounts To Be Distributed

Except as otherwise provided herein, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim shall receive, in one or more payments or deliveries, the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII.B hereof.  Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

6.      Setoffs

The Creditor Trust may withhold (but not setoff except as set forth below) from the distributions called for hereunder on account of any Allowed Claim an amount equal to any claims, equity interests, rights and Causes of Action of any nature that the Creditor Trust may hold against the Holder of any such Allowed Claim.  In the event that any such claims, equity interests, rights and Causes of Action of any nature that the Creditor Trust may hold against the Holder of any such Allowed Claim are adjudicated by Final Order or otherwise resolved, the Creditor Trust may, pursuant to Bankruptcy Code §553 or applicable non-bankruptcy law, setoff or recoup against any Allowed Claim and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), the amount of any adjudicated or resolved claims, equity interests, rights and Causes of Action of any nature that the Creditor Trust may hold against the Holder of any such Allowed Claim, but only to the extent of such adjudicated or resolved amount.  Neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Creditor Trust of any such claims, equity interests, rights and Causes of Action that the Creditor Trust may possess against any such Holder, except as specifically provided herein.

G.      PROCEDURES    FOR    RESOLVING    DISPUTED,    CONTINGENT    AND UNLIQUIDATED CLAIMS OR INTERESTS

1.      Resolution of Disputed Claims

(a)      Prosecution of Claims Objections

22

The Creditor Trust shall have the sole authority to File objections on or before the Claims Objection Bar Date and settle, compromise, withdraw or litigate to judgment objections to any and all Claims filed by such party.  From and after the Effective Date, the Creditor Trust may settle, compromise, or withdraw objections to any Disputed Claim without approval of the Bankruptcy Court or notice to any party.

(b)      Procedure of Omnibus Objections to Claims

The Creditor Trust is permitted to file omnibus objections to Claims (an "Omnibus Objection") on any grounds, including, but not limited to, those grounds specified in Bankruptcy Rule 3007(d).  For Claims that have been transferred, a notice shall be provided only to the claimant listed as being the owner of such Claim on the Debtors' claims register as of the date the Omnibus Objection is filed.  The notice shall include a copy of the relevant Omnibus Objection but not the exhibits thereto listing all Claims subject to the objection thereby; rather, the notice shall (i) identify the particular Claim or Claims filed by the claimant that are the subject of the Omnibus Objection, (ii) provide a unique, specified, and detailed basis for the objection, (iii) explain the proposed treatment of the Claim, (iv) notify such claimant of the steps that must be taken to contest the objection, and (v) otherwise comply with the Bankruptcy Rules.

(c)      Claims Estimation

The Creditor Trust may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law, and (b) any contingent or unliquidated Claim pursuant to applicable law, including Bankruptcy Code §502(c), regardless of whether the Creditor Trust or the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§157 and 1334 to estimate any Disputed Claim, contingent Claim or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the claims register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any Disputed Claim, contingent Claim or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for purposes of distributions, and the Creditor Trust may elect to pursue additional objections to the ultimate distribution on such Claim.  If the estimated amount constitutes a maximum limitation on such Claim, the Creditor Trust may elect to pursue any supplemental proceedings to object to any ultimate distribution on account of such Claim.  Notwithstanding Bankruptcy Code §502(j), in no event shall any Holder of a Claim that has been estimated pursuant to Bankruptcy Code §502(c) or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before twenty (20) days after the date on which such Claim is estimated.  Each of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

23

HTRUST/2336303.3/067837

(d)      Deadline to File Objections to Claims

Any objections to Claims, other than Administrative Claims, shall be Filed no later than the Claims Objection Bar Date.

2.      Claims Allowance

Except as expressly provided herein or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim shall be deemed Allowed unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order (including the Confirmation Order) in the Chapter 11 Cases allowing such Claim.  Except as expressly provided by the Plan or any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), the Creditor Trust will have and shall retain after the Effective Date any and all rights and defenses that the Debtors had with respect to any Claim as of the Petition Date.

3.      Controversy Concerning Impairment

If a controversy arises as to whether any Claims or any Class of Claims are Impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine any such controversy before the Confirmation Date.

4.      Disallowance of Claims

All Claims of any Entity from which property is sought by the Creditor Trust under Bankruptcy Code §§542, 543, 550 or 553, or that the Creditor Trust allege is a transferee of a transfer that is avoidable under Bankruptcy Code §§522(f), 522(h), 544, 545, 547, 548, 549 or 724(a), shall be disallowed if such Entity or transferee has failed to turnover such property.

EXCEPT AS OTHERWISE AGREED TO BY THE CREDITOR TRUST, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE CLAIMS BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER OF THE BANKRUPTCY COURT ON OR BEFORE THE CONFIRMATION HEARING.

5.      Amendments to Claims

On or after the Effective Date, except as otherwise provided herein, a claim may not be re-Filed or amended without the prior authorization of the Bankruptcy Court or the Creditor Trust, and any such re-Filed or amended Claim shall be deemed disallowed and expunged without any further notice to or action, order, or approval of the Bankruptcy Court.

24

H.      CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

1.      Conditions Precedent to Confirmation

It shall be conditions precedent to Confirmation of the Plan that:

(a)     all provisions, terms, and conditions of the Plan are approved in the Confirmation Order; and

(b)     the proposed Confirmation Order shall contain provisions that, among other things: (i) authorize the implementation of the Plan in accordance with its terms; (ii) approve in all respects the other settlements, transactions, and agreements to be effected pursuant to the Plan; (iii) find that the Plan complies with all applicable provisions of the Bankruptcy Code, including that the Plan was proposed in good faith and that the Confirmation Order was not procured by fraud; and (iv) approve the Creditor Trust Agreement.

2.      Conditions Precedent to Consummation

It shall be a condition to Consummation of the Plan and occurrence of the Effective Date that the following conditions shall have been satisfied or waive pursuant to the provisions of Article IX hereof:

(a)     the Confirmation Order shall have been entered and become a Final Order in form and substance acceptable to the Creditor Trust;

(b)     all documents and agreements necessary to implement the Plan shall have (i) been tendered for delivery, and (ii) been executed; and

(c)     all actions, documents, certificates and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties.

3.      Waiver of Conditions

The conditions precedent to Confirmation of the Plan and to Consummation of the Plan set forth in this Article IX may be waived by the Creditor Trust, on notice to the United States Trustee and without further notice, leave, or order of the Bankruptcy Court, or any formal action other than by proceeding to confirm or consummate the Plan.

4.      Effect of Non-Occurrence of Conditions to Consummation

If the Consummation of the Plan does not occur, other than through a specific act or failure to act of the Debtors, the Plan shall be null and void in all respects and nothing contained

25

in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by or Claims against the Debtors; (2) prejudice in any manner the rights of the Debtors, any Holders, or any other Entity; or (3) constitute an admission, acknowledgement, offer, or undertaking by the Debtors, any Holders or any other entity in any respect.  Any act or failure to act of the Debtors which prevents the occurrence of the Effective Date shall be considered a violation of an order of the Bankruptcy Court, and is subject to a finding of contempt.

## I.   SETTLEMENT, INJUNCTION, AND RELATED PROVISIONS

### 1.   Compromise and Settlement

Notwithstanding anything contained herein to the contrary, the allowance, classification and treatment of all Allowed Claims and their respective distributions and treatments hereunder takes into account and conforms to the relative priority and rights of the Claims and the Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, Bankruptcy Code §§510(b) and 510(c) or otherwise.  As of the Effective Date, any and all such rights described in the preceding sentence are settled, compromised and released pursuant hereto.  The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Debtors, their Estates, the Creditor Trust, the Creditor Trustee, the Creditor Trust Oversight Committee and all Holders of Claims, (2) fair, equitable and reasonable, (3) made in good faith, and (4) approved by the Bankruptcy Court pursuant to Bankruptcy Code §363 and Bankruptcy Rule 9019.

In accordance with the provisions of this Plan, and pursuant to Bankruptcy Code §363 and Bankruptcy Rule 9019, without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date (1) the Creditor Trust, in its sole and absolute discretion, compromise and settle Claims against the Debtors, and (2) the Creditor Trust may, in its respective sole and absolute discretion, compromise and settle Causes of Action against other Entities.

### 2.   Exculpation

TO THE EXTENT PERMISSIBLE UNDER BANKRUPTCY CODE §1125(e), THE DEBTORS' COUNSEL, THE DEBTORS' CHIEF RESTRUCTURING OFFICER, THE CREDITOR TRUST, THE CREDITOR TRUSTEE, THE CREDITOR TRUST OVERSIGHT COMMITTEE, AND ANY PROFESSIONALS OF THE AFOREMENTIONED ENTITIES SHALL NEITHER HAVE, NOR INCUR ANY LIABILITY TO ANY ENTITY FOR ACTS BEFORE THE EFFECTIVE DATE TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH, OR RELATED TO FORMULATING, NEGOTIATING, PREPARING, DISSEMINATING, IMPLEMENTING, ADMINISTERING, CONFIRMING OR EFFECTING THE CONSUMMATION OF THE PLAN, THE DISCLOSURE STATEMENT, OR ANY CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN, OR ANY ACT BEFORE THE EFFECTIVE DATE TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR IN CONTEMPLATION OF THE RESTRUCTURING OF THE

HTRUST/2336303.3/067837

DEBTORS' ASSETS AND LIABILITIES; PROVIDED, HOWEVER, THAT THE FOREGOING "EXCULPATION" SHALL HAVE NO EFFECT ON THE LIABILITY OF ANY ENTITY THAT RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE RESULTED FROM SUCH PERSON'S OR ENTITY'S GROSS NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT, ULTRA VIRES ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES, AND, IN ALL RESPECTS, THE DEBTORS SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THE PLAN.

NOTHING IN THE PLAN OR THE CONFIRMATION ORDER SHALL ENJOIN THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE AND LOCAL AUTHORITY, FROM BRINGING ANY CLAIM, SUIT, ACTION OR OTHER PROCEEDINGS (WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR OTHERWISE) AGAINST THE CREDITOR TRUST, THE CREDITOR TRUSTEE, THE CREDITOR TRUST OVERSIGHT COMMITTEE, OR ANY OF THE CREDITOR TRUST'S, THE CREDITOR TRUSTEE'S, OR THE CREDITOR TRUST OVERSIGHT COMMITTEE'S ATTORNEYS, ADVISORS, AGENTS, REPRESENTATIVES AND ASSIGNS, OR THE DEBTORS' PROPERTY, FOR ANY LIABILITY, INCLUDING UNDER THE INTERNAL REVENUE CODE, THE ENVIRONMENTAL LAWS (OR ANY CRIMINAL LAWS) OF THE UNITED STATES OR ANY STATE OR LOCAL AUTHORITY. IN ADDITION, THE INJUNCTION PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT.

3.     Preservation of Rights of Action / Reservation of Rights

(a)     Maintenance of Causes of Action

Except as otherwise provided in the Plan or Confirmation Order, including the exculpation provisions thereof, after the Effective Date, the Creditor Trust shall retain all rights to and shall have standing to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action, whether existing as of the Petition Date or thereafter, arising, in any court or other tribunal including in an adversary proceeding Filed in the Chapter 11 Cases.

The Creditor Trust, may in its sole discretion, elect not to pursue any Causes of Action that the Creditor Trust otherwise has authority to pursue hereunder, the pursuit of which the Creditor Trust deems not to be in the best interest of the Estates.

Except as specifically provided in the Plan or Confirmation Order, including the exculpation provisions thereof, nothing contained herein or in the Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtors or their Estates had immediately prior to the Petition Date, against or with respect to any Claim whether impaired or left unimpaired by the Plan. Except as specifically provided for in the Plan or Confirmation Order, including the exculpation provisions thereof, the Creditor Trust shall have, retain, reserve, and be entitled to assert all such

claims, Causes of Action, rights of setoff, or other legal or equitable defense which the Debtors had immediately prior to the Petition Date fully as if the Chapter 11 Cases had not been commenced, and all legal and equitable rights of the Debtors respecting any Claim whether impaired or left unimpaired by the Plan may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Cases had not been commenced.

Except as specifically provided in the Plan or Confirmation Order, including the exculpation provisions thereof, any claims, rights, or Causes of Action that the Debtors may hold against any Entity shall vest in the Creditor Trust on the Effective Date and the Creditor Trust shall have the exclusive right and authority to institute, prosecute, abandon, settle or compromise any and all such claims, rights and Causes of Action, and the Creditor Trust shall not require the consent or approval or any party or any further order of the Bankruptcy Court to settle or resolve any claims, rights and Causes of Action.

(b)     Preservation of All Causes of Action Not Expressly Sold, Settled, or Released

Unless a claim or Cause of Action against a Holder of a Claim or other Entity is expressly waived, abandoned, relinquished, released, compromised, assigned, or settled in the Plan or any Final Order (including the Confirmation Order), including the exculpation provisions thereof, the Debtors expressly reserve such claim or Cause of Action for later action by the Creditor Trust (including claims and Causes of Action of which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such claims or Causes of Action upon or after the Confirmation or Consummation of the Plan based on the Disclosure Statement, Plan or the Confirmation Order, except where such claims or Causes of Action have been expressly released in the Plan, or any other Final Order (including the Confirmation Order), including the exculpation provisions thereof.  In addition, the Creditor Trust, as the case may be, reserve the right to pursue to adopt any claims alleged in any lawsuit in which the Debtors are a plaintiff, defendant, or an interested party, against any Entity, including the plaintiffs or co-defendants in such lawsuits except where such claims or Causes of Action have been released in the Plan or any other Final Order (including the Confirmation Order).

4.     Preservation of Insurance

Nothing in the Plan shall diminish or impair the enforceability of any policies of insurance that may cover claims or Causes of Action against the Debtors, any other Entity, or any other Person.

5.     Injunction

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS, INTERESTS, CAUSES OF ACTION, OR

HTRUST/2336303.3/067837

LIABILITIES AGAINST THE DEBTORS' ESTATES, OR THE CREDITOR TRUST, THE CREDITOR TRUSTEE, OR THE CREDITOR TRUST OVERSIGHT COMMITTEE SOLELY IN SUCH CAPACITY, INCLUDING BUT NOT LIMITED TO ANY AND ALL PROPERTY OF THE DEBTORS AND THE CREDITOR TRUST ASSETS, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST ANY ENTITY ENTITLED TO EXCULPATION UNDER THIS PLAN, ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY CLAIMS, INTERESTS CAUSES OF ACTION OR LIABILITIES OF THE DEBTORS; (B) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST ANY ENTITY ENTITLED TO EXCULPATION ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY CLAIMS, INTERESTS, CAUSES OF ACTION OR LIABILITIES OF THE DEBTORS; (C) CREATING, PERFECTING OR ENFORCING ANY LIEN, CLAIM OR ENCUMBRANCE OF ANY KIND AGAINST ANY ENTITY ENTITLED TO EXCULPATION ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, INTERESTS, CAUSES OF ACTION OR LIABILITIES OF THE DEBTORS; AND (D) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY ENTITY ENTITLED TO EXCULPATION ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, INTERESTS, CAUSES OF ACTION OR LIABILITIES, UNLESS SUCH HOLDER HAS FILED A MOTION REQUESTING THE RIGHT TO PERFORM SUCH SETOFF ON OR BEFORE THE CONFIRMATION DATE, AND NOTWITHSTANDING ANY INDICATION IN A PROOF OF CLAIM OR INTEREST OR OTHERWISE THAT SUCH HOLDER ASSERTS, HAS OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO BANKRUPTCY CODE §553 OR OTHERWISE; PROVIDED, HOWEVER, THAT THE FOREGOING INJUNCTION SHALL HAVE NO EFFECT ON THE LIABILITY OF ANY ENTITY THAT RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE RESULTED FROM SUCH PERSON'S OR ENTITY'S GROSS NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT, ULTRA VIRES ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES, AND, IN ALL RESPECTS, THE CREDITOR TRUST, THE CREDITOR TRUSTEE, AND THE CREDITOR TRUST OVERSIGHT COMMITTEE SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO WITH RESPECT TO ITS DUTIES AND RESPONSIBILITIES UNDER THE PLAN.

NOTHING IN THE PLAN OR THE CONFIRMATION ORDER SHALL ENJOIN THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE AND LOCAL AUTHORITY, FROM BRINGING ANY CLAIM, SUIT, ACTION OR OTHER PROCEEDINGS (WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR OTHERWISE) AGAINST THE CREDITOR TRUST, THE CREDITOR TRUSTEE, THE CREDITOR TRUST OVERSIGHT COMMITTEE, OR ANY OF THE CREDITOR TRUST'S, THE CREDITOR TRUSTEE'S, THE CREDITOR TRUST OVERSIGHT COMMITTEE'S ATTORNEYS, ADVISORS, AGENTS, REPRESENTATIVES AND ASSIGNS, OR THE CREDITOR TRUST ASSETS, FOR ANY LIABILITY, INCLUDING UNDER THE

HTRUST/2336303.3/067837

INTERNAL REVENUE CODE, THE ENVIRONMENTAL LAWS (OR ANY CRIMINAL LAWS) OF THE UNITED STATES OR ANY STATE OR LOCAL AUTHORITY.  IN ADDITION, THE INJUNCTION PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT.

J.      RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, to the extent legally permissible, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Cases and all Persons and Entities with respect to all matters related to the Chapter 11 Cases, the Debtors, the Creditor Trust and the Plan, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for the payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of any Claim;

2.      grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

3.      resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which the Debtors are party or with respect to which the Debtors may be liable, and to adjudicate and, if necessary, liquidate, any Claims arising under any Executory Contract or Unexpired Lease;

4.      resolve any issues related to any matters adjudicated in the Chapter 11 Cases;

5.      resolve any issues related to any order entered by the Bankruptcy Court in the Chapter 11 Cases;

6.      ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

7.      decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving the Debtors that may be pending on the Effective Date or instituted by the Creditor Trust after the Effective Date; provided that the Creditor Trust shall reserve the right to commence actions in all appropriate forums and jurisdictions;

8.      enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, and other agreements or documents adopted in connection with the Plan, a Sale, or the Disclosure Statement;

HTRUST/2336303.3/067837

9.      resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan or a Sale;

10.     issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan, except as otherwise provided in the Plan;

11.     enforce the exculpations and injunctions contained in this Plan;

12.     resolve any cases, controversies, suits or dispute with respect to any injunction, exculpation or other provisions contained in this Plan, and enter such orders or take such other actions as may be necessary or appropriate to implement or enforce all such provisions;

13.     enter and implement such orders or take such other actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

14.     resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

15.     enter an order and final decree closing the Chapter 11 Cases.

K.      MISCELLANEOUS PROVISIONS

1.      Payment of Statutory Fees

All fees and any applicable interest payable pursuant to 28 U.S.C. § 1930(a)(6) shall be paid by the Creditor Trust on the Effective Date of the Plan.  Thereafter, all fees, and any applicable interest, payable pursuant to 28 U.S.C. §1930 after the Effective Date shall be paid prior to the closing of the Chapter 11 Cases when due or as soon thereafter as practicable.

2.      Quarterly Reports

Creditor Trust shall file quarterly reports of their disbursements after the Confirmation Date and provide copies to the U.S. Trustee and counsel to KeyBank.

3.      Modification of Plan

Effective as of the date hereof and subject to the limitations and rights contained in the Plan: (a) the Creditor Trust reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order; and (b) after the entry of the Confirmation Order, the Creditor Trust may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with Bankruptcy Code §1127(b) or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may

HTRUST/2336303.3/067837

be necessary to carry out the purpose and intent of the Plan.

4.      Revocation of Plan

The Creditor Trust reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent chapter 11 plans.  If the Creditor Trust revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against the Creditor Trust or any other Entity, or any Interests; (b) prejudice in any manner the rights of the Creditor Trust or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Creditor Trust, or any other Entity.

5.      Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall insure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

6.      Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order becomes a Final Order.  Neither the filing of the Plan, any statement or provisions contained herein, nor the taking of any action by the Creditor Trust, or any other Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Creditor Trust with respect to the Holders of Claims or Interests or other Entity; or (2) any Holder of a Claim or an Interest or Entity prior to the Effective Date.

7.      Further Assurances

The Debtors or the Creditor Trust, as applicable, all Holders of Claims receiving distributions hereunder, and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

8.      Severability

If, prior to Confirmation, any term or provisions of the Plan is held by the Bankruptcy Court, or any other court with jurisdiction over the Chapter 11 Case, to be invalid, void or unenforceable, the Bankruptcy Court, or any other court with jurisdiction over the Chapter 11 Cases, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term

or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted, provided that any such alteration or interpretation must be in form and substance acceptable to the Creditor Trust; provided further that the Creditor Trust may seek an expedited hearing before the Bankruptcy Court, or any other court with jurisdiction over the Chapter 11 Cases, to address any objection to any such alteration or interpretation of the foregoing. Notwithstanding any such order by the Bankruptcy Court, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect. The Confirmation Order shall constitute a judicial determination and shall provide that each term and the provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

9.    Service of Documents

Any pleading, notice or other document required by the Plan to be served on or delivered shall be sent to:

(a)    If to the Debtors:

> Tara Jewels Holdings, Inc., *et al*.
> c/o SilvermanAcampora LLP
> 100 Jericho Quadrangle, Suite 300
> Jericho, New York 11753
> Attention:  Ronald J. Friedman, Esq.
>     Brian Powers, Esq.
> RFriedman@silvermanacampora.com
> BPowers@silvermanacampora.com

(b)    If to the Creditor trust, at the address indicated in the Creditor Trust Agreement.

(c)    If to a Holder of a Claim or Interest, at the address set forth in its Proof of Claim or proof of Interest filed with and Allowed by the Bankruptcy Court, or, if none, at its address set forth in the Schedules prepared and filed by the Debtors with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b).

## IV.    SOLICITATION AND VOTING PROCEDURES

### A.    RECORD DATE

The Record Date is October 7, 2019, the date on which the Bankruptcy Court entered the Disclosure Statement Order. The Record Date is the date on which the following will be determined: (a) which Holders of Claims are entitled to vote to accept or reject the Plan and receive the Solicitation Package; and (b) whether Claims have been properly assigned or transferred to an assignee pursuant to Bankruptcy Rule 3001(e) such that the assignee can vote as the Holder of a Claim.

HTRUST/2336303.3/067837

B.     VOTING DEADLINE

The Voting Deadline is November 18, 2019 at 4:00 p.m.  To be counted as votes to accept or reject the Plan, all Ballots must be properly executed, completed and delivered by using the return envelope provided by: (a) first class mail; (b) overnight courier; or (c) personal delivery, so that they are actually received no later than the Voting Deadline by the Voting Agent.  The Ballots will clearly indicate the appropriate return address.  Ballots returnable to the Voting Agent should be sent to: SilvermanAcampora LLP, 100 Jericho Quadrangle, Suite 300, Jericho, New York 11753, Attn: Brian Powers.

IF A BALLOT IS RECEIVED AFTER THE VOTING DEADLINE, IT WILL NOT BE COUNTED.

ANY BALLOT THAT IS PROPERLY EXECUTED BY THE HOLDER OF A CLAIM, BUT THAT DOES NOT CLEARLY INDICATE AN ACCEPTANCE OR REJECTION OF THE PLAN OR ANY BALLOT THAT INDICATES BOTH AN ACCEPTANCE AND A REJECTION OF THE PLAN, WILL BE COUNTED AS AN ACCEPTANCE OF THE PLAN.

BY SIGNING AND RETURNING A BALLOT, EACH HOLDER OF A CLAIM WILL CERTIFY TO THE BANKRUPTCY COURT AND THE DEBTORS THAT NO OTHER BALLOTS WITH RESPECT TO SUCH CLAIM HAVE BEEN CAST OR, IF ANY OTHER BALLOTS HAVE BEEN CAST WITH RESPECT TO SUCH CLASS OF CLAIMS, SUCH OTHER BALLOTS INDICATED THE SAME VOTE TO ACCEPT OR REJECT THE PLAN.

IT IS IMPORTANT TO FOLLOW THE SPECIFIC INSTRUCTIONS PROVIDED ON EACH BALLOT, AS APPROPRIATE, WHEN SUBMITTING A VOTE.

C.     SOLICITATION PROCEDURES

1.     Solicitation Package

The following documents and materials will constitute the Solicitation Package:

(a)     the Disclosure Statement Order;

(b)     an appropriate form of Ballot and instructions with respect thereto, if applicable;

(c)     the approved form of the Disclosure Statement (together with the Plan, which is Exhibit A thereto); and

(d)     such other materials as the Bankruptcy Court may direct.

2.     Distribution of the Solicitation Package

HTRUST/2336303.3/067837

The Solicitation Package will be distributed to Holders of Claims in the Voting Classes as of the Record Date.

### D.   VOTING AND TABULATION PROCEDURES

1.   Ballot Tabulation

The following voting procedures and standard assumptions will be used in tabulating the ballots:

(a)   a Claim will be deemed temporarily counted for voting purposes in an amount equal to (i) if a timely filed Proof of Claim has not been filed, the undisputed amount of such Claim as set forth in the Schedules filed by the Debtors, or (ii) the amount of such Claim as set forth in a timely filed Proof of Claim;

(b)   if a Claim has been estimated or otherwise allowed for voting purposes by order of the Court, such Claim will be temporarily allowed for voting purposes in the amount so estimated or allowed by the Court;

(c)   if a Claim is listed in the Schedules as contingent, unliquidated or disputed, such Claim will be disallowed for voting purposes'

(d)   if the Debtor has filed and served an objection to a Claim at least ten (10) days before the Voting Deadline, such claim will be temporarily allowed disallowed for voting purposes in accordance with the relief sought in the objection; and

(e)   if a Holder of a Claim identifies a Claim amount on its Ballot that is less than the amount otherwise calculated in accordance with the Tabulation Rules, the Claim will be temporarily counted for voting purposes in the lesser amount identified on such ballot.

## V.   **CONFIRMATION PROCEDURES**

### A.   CONFIRMATION HEARING

Bankruptcy Code §1128(a) requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of a plan filed under chapter 11 of the Bankruptcy Code.  Bankruptcy Code §1128(b) provides that any party in interest may object to confirmation of the plan.

1.   Confirmation Hearing Date

The Confirmation Hearing will be held on November 25, 2019 at 11:00 a.m. (prevailing

35

E.S.T.), before the Honorable Shelley C. Chapman, United States Bankruptcy Judge, in the Bankruptcy Court. The Confirmation Hearing may be continued without further notice other than an adjournment announced in open court at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing. The Bankruptcy Court, in its discretion and prior to the Confirmation Hearing, may put in place additional procedures governing the Confirmation Hearing. The Plan may be modified if necessary, prior to, during, or as a result of the Confirmation Hearing, without further notice to parties in interest.

2.      Plan Objection Deadline

The Plan Objection Deadline (the "Objection Deadline") is November 18, 2019 at 4:00 p.m. All objections to the Plan must be filed with the Bankruptcy Court and served on the Debtors, and certain other parties in accordance with the Disclosure Statement Order, as approved, on or before the Objection Deadline. Objections to the Plan or requests for modifications to the Plan, if any, must:

- be in writing;

- conform to the Bankruptcy Rules and the Local Bankruptcy Rules;

- state the name and address of the objecting Entity and the amount and nature of the Claim or Interest of such Entity;

- state with particularity the basis and nature of the objection and, if practicable, a proposed modification to the Plan that would resolve the objection; and

- be filed, contemporaneously with a proof of service, with the Bankruptcy Court and served so that it is actually received by the Debtors, and other parties identified in the Disclosure Statement Order on or prior to the Objection Deadline.

The proposed schedule will provide Entities with sufficient notice of the Objection Deadline, which will be at least 28 days, as required by Bankruptcy Rule 2002(b), plus three (3) days for service by first class mail, as required by the Bankruptcy Rule 9006(f). The Debtors believe that the Objection Deadline will afford the Bankruptcy Court, the Debtors, and other parties in interest reasonable time to consider any objection to confirmation of the Plan prior to the Confirmation Hearing.

THE BANKRUPTCY COURT MAY NOT CONSIDER OBJECTIONS TO THE PLAN UNLESS THEY ARE TIMELY-SERVED AND FILED IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER.

Objections must be served on all of the following parties:

The Debtors

SILVERMANACAMPORA LLP

36

100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Attn:   Brian Powers, Esq.


The United States Trustee for Region 2

Office of the United States Trustee
U.S. Federal Office Building
201 Varick Street, Room 1006
New York, New York 10014
Attn: Paul Schwartzberg, Esq.

## B.   STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Disclosure Statement satisfies Bankruptcy Code §1125 and whether the Plan satisfies the requirements of Bankruptcy Code §1129.  The Debtors believe that: (1) the Disclosure Statement and the Plan satisfy all of the necessary statutory requirements of chapter 11 of the Bankruptcy Code; (2) the Debtors have complied or will have complied with all of the necessary requirements of chapter 11 of the Bankruptcy Code; and (3) the Plan has been proposed in good faith.  Specifically, in addition to others, as applicable, the Debtors believe that the Plan satisfies or will satisfy the applicable Confirmation requirements of Bankruptcy Code §1129 as set forth below:

- The Plan complies with the applicable provisions of the Bankruptcy Code.

- The Debtors, as the Plan proponent, will have complied with the applicable provisions of the Bankruptcy Code.

- The Plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the cases, has been disclosed to the Bankruptcy Court, and any such payment: (1) made before the Confirmation of the Plan is reasonable; or (2) subject to the approval of the Bankruptcy Court as reasonable, if it is to be fixed after the Confirmation of the Plan.

- Either each Holder of an Impaired Claim will have accepted the Plan, or will receive or retain under the Plan on account of such Claim, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would receive or retain if the Debtor were liquidated on that date under chapter 7 of the Bankruptcy Code.

- Each Class of Claims that is entitled to vote on the Plan will have either accepted the Plan or is not Impaired under the Plan, or the Plan can be confirmed without the approval of such Class pursuant to Bankruptcy Code §1129(b).

37

- Except to the extent that the Holder of a particular Claim will agree to a different treatment of its Claim, the Plan provides that Administrative Claims and Other Priority Claims will be paid in full on the Effective Date, or as soon thereafter as is reasonably practicable.

- At least one Class of Impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in that Class.

- All fees of the type described in 28 U.S.C. §1930, including the fees of the United States Trustee, will be paid as of the Effective Date.

1.    Best Interests of Creditors Test / Liquidation Analysis

Pursuant to Bankruptcy Code §1129(a)(7), for a plan to be confirmed, it must provide that holders of claims or equity interests will receive at least as much under a plan as they would receive in a liquidation of the debtor under chapter 7 of the Bankruptcy Code (the "Best Interest Test"). The Best Interest Test with respect to each impaired class requires that each holder of an allowed claim or equity interest of such class either: (i) accepts the plan; or (ii) receives or retains under the plan property of a value, as of the effective date, that is not less than the value such holder would receive or retain if the debtor was liquidated under chapter 7 of the Bankruptcy Code. The Bankruptcy Court will determine whether the value received under the Plan by the Holders of Allowed Claims in each Class or Interests equals or exceeds the value that would be allocated to such Holders if the Debtors' assets were liquidated under chapter 7 of the Bankruptcy Code.

The Plan provides for the liquidation of the Creditor Trust Assets for the payment of Allowed Claims. Accordingly, the Debtors believe that the Plan meets the Best Interest Test and provides value which is not less than that which would be recovered by each such Holder in a chapter 7 bankruptcy proceeding or proceedings. Generally, to determine what Holders of Allowed Claims and Interests in each impaired Class would receive if the Debtors' estates were liquidated, the Bankruptcy Court must determine what funds would be generated from the liquidation of Debtors' assets and properties in the context of a chapter 7 liquidation case for the Debtors, which for unsecured creditors would consist of the proceeds resulting from the disposition of the assets of the Debtors, augmented by the unencumbered Cash held by Debtors at the time of the commencement of the liquidation case. Such Cash amounts would be reduced by the costs and expenses of the liquidation and the use of chapter 7 for the purpose of liquidation.

The chapter 7 liquidation of the Debtors would also likely result in delay in the payment to creditors. Among other things, pursuant to Bankruptcy Rule 3002(c), chapter 7 cases could trigger a new bar date for filing Claims that would be more than ninety (90) days following conversion of the Chapter 11 Cases to chapter 7. Hence, chapter 7 liquidation would not only delay distribution, but would also raise the prospect of additional claims that were not asserted in the Chapter 11 Case.

HTRUST/2336303.3/067837

2.        Feasibility

Bankruptcy Code § 1129(a)(11) requires the Bankruptcy Court to find, as a condition of confirmation, that confirmation is not likely to be followed by the debtor's liquidation or the need for further financial reorganization, unless that liquidation or reorganization is contemplated by the Plan. The Plan contemplates that the Creditor Trust Proceeds will be distributed to the creditors of the Debtors pursuant to the terms of the Plan. The Debtors believe that the Plan meets the financial feasibility requirement. The Debtors believe that, subject to the risk factors described below, sufficient funds will exist to make all payments required by the Plan.

3.        Acceptance by Impaired Classes

The Bankruptcy Code requires, as a condition to confirmation, that, except as described in the following section, each class of claims or equity interests that is impaired under a plan, accept the plan. A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required. A class is "impaired" unless the plan: (a) leaves unaltered the legal, equitable and contractual rights to which the claim or the equity interest entitles the holder of such claim or equity interest; or (b) cures any default, reinstates the original terms of such obligation, compensates the holder for certain damages or losses, as applicable, and does not otherwise alter the legal, equitable or contractual rights to which such claim or equity interest entitles the holder of such claim or equity interest.

Bankruptcy Code §1126(c) defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of allowed claims in that class, counting only those claims that actually voted to accept or to reject the plan. Thus, a class of claims will have voted to accept the plan only if two-thirds in amount and a majority in number actually voting cast their ballots in favor of acceptance. For a class of impaired equity interests to accept a plan, Bankruptcy Code §1126(d) requires acceptance by equity interest holders that hold at least two-thirds in amount of the allowed equity interests of such class, counting only those equity interests that actually voted to accept or reject the plan. Thus, a class of equity interests will have voted to accept the plan only if two-thirds in amount actually voting cast their ballots in favor of acceptance.

Claims in Class 1 are Unimpaired under the Plan, and, as a result, the Holders of such Claims are deemed to have accepted the Plan and their votes will not be solicited.

Claims and Interests in Classes 2, 3, and 4 are Impaired under the Plan. Those Classes will have accepted the Plan if the Plan is accepted by at least two-thirds in amount and a majority in number of the Claims and Interests of the Class (other than any Claims of Creditors designated under Bankruptcy Code §1126(e)) that have voted to accept or reject the Plan.

C.        RISK FACTORS

Prior to deciding whether and how to vote on the Plan, each Holder of a Claim or Interest

HTRUST/2336303.3/067837

should consider carefully all of the information in this Disclosure Statement and should particularly consider the Risk Factors described in Article VI, "Plan-Related Risk Factors and Alternatives to Confirmation and Consummation of the Plan."

D.      CONTACT FOR MORE INFORMATION

Any interest party desiring further information about the Plan should contact the Debtors' counsel, SilvermanAcampora LLP, 100 Jericho Quadrangle, Suite 300, Jericho, New York 11753, Attn: Brian Powers, Tel: (516) 479-6300.

### VI.     PLAN RELATED RISK FACTORS AND ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

THE IMPLEMENTATION OF THE PLAN IS SUBJECT TO A NUMBER OF RISKS, INCLUDING THOSE ENUMERATED BELOW.  PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN, ALL HOLDERS OF CLAIMS AND INTERESTS THAT ARE IMPAIRED AND ENTITLED TO VOTE ON THE PLAN SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH HEREIN, AS WELL AS ALL OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT AND OTHER DOCUMENTS DELIVERED TOGETHER HEREWITH AND/OR INCORPORATED BY REFERENCE HEREIN.  THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION, OR ALTERNATIVES TO THE PLAN.

A.      GENERAL BANKRUPTCY LAW AND PLAN-RELATED CONSIDERATIONS

1.      Parties in Interest May Object to the Classification of Claims and Interests

Bankruptcy Code §1122 provides that a plan may place a claim or an equity interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class.  The Debtors believe that the classification of Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Debtors created certain Classes of Claims and Interests, each encompassing Claims or Interests, as applicable, that are substantially similar to the other Claims and Interests in each such Class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

2.      Failure to Satisfy Vote Requirement

If votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtors intend to seek, as promptly as practicable thereafter, Confirmation of the Plan.  In the event that sufficient votes are not received, the Debtors may seek to accomplish an alternative chapter 11 plan.  Additionally, it is possible that other parties in interest will have the right to propose an alternative plan.  There can be no assurance that the

HTRUST/2336303.3/067837

terms of any such alternative chapter 11 plan would be similar or as favorable to the Holders of Allowed Claims as those proposed in the Plan.

3.     The Debtors May Not Be Able to Secure Confirmation of the Plan or Confirmation May Be Delayed

Bankruptcy Code §1129 sets forth the requirements for confirmation of a chapter 11 plan, and requires, among other things, a finding by the bankruptcy court that the value of distributions to non-accepting holders of claims and equity interests within a particular class under such plan will not be less than the value of distributions such holders would receive if the Debtors' estates were liquidated under chapter 7 of the Bankruptcy Code.

There can be no assurance that the requisite acceptances to confirm the Plan will be received. Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan. A non-accepting Holder of an Allowed Claim might challenge either the adequacy of this Disclosure Statement or whether the solicitation procedures and voting results satisfy the requirements of the Bankruptcy Code or Bankruptcy Rules. Even if the Bankruptcy Court determined that the Disclosure Statement, the solicitation procedures and voting results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it found that any of the statutory requirements for Confirmation had not been met.

The Confirmation and Consummation of the Plan also are subject to certain other conditions. No assurance can be given that these conditions will be satisfied.

4.     Creditor Trust May Object to the Amount of Classification Claim

Except as otherwise provided in the Plan, the Creditor Trust reserves the right to object to the amount or classification of any Claim under the Plan. The estimates set forth in this Disclosure Statement cannot be relied on by any Holder of a Claim where such Claim is subject to an objection. Any Holder of a Claim that is subject to an objection thus may not receive its expected share of the estimated distributions described in this Disclosure Statement.

5.     Risk of Non-Occurrence of the Effective Date

Although the Debtors believe that the Effective Date will occur quickly after the Confirmation Date, there can be no assurance as to such timing, or as to whether the Effective Date will, in fact, occur.

6.     Risks Affecting Potential Recoveries

Due to the nature of the Creditor Trust Assets, the Debtors cannot state with full certainty what recovery will be available to Holders of Claims as any Sale of the Creditor Trust Assets yet to occur and recoveries on any Causes of Action are speculative. In addition, the Debtors cannot know with certainty, at this time, the number or size of Claims in Classes 2, 3, and 4 that will ultimately be Allowed.

HTRUST/2336303.3/067837

B.      RISKS ASSOCIATED WITH FORWARD LOOKING STATEMENTS

The financial information contained in this Disclosure Statement has not been audited.  In preparing this Disclosure Statement, the Debtors, and its professionals, relied on financial data derived from the Debtors' Schedules and other filings in the Chapter 11 Case that were available at the time of such preparation.  Although the Debtors, and their professionals, have used their reasonable business judgment to ensure the accuracy of the financial information provided in this Disclosure Statement, and while the Debtors, and its professionals, believe that such financial information fairly reflects the financial condition of the Debtors, the Debtors, and its professionals, are unable to warrant or represent that the financial information contained herein and attached hereto is without inaccuracies.

C.      DISCLOSURE STATEMENT DISCLAIMER

1.      Information Contained Herein Is For Soliciting Votes

The information contained in this Disclosure Statement is for purposes of soliciting acceptances of the Plan and may not be relied upon for any other purposes.

2.      This Disclosure Statement Was Not Reviewed or Approved by the Securities and Exchange Commission

This Disclosure Statement was not filed with the Commission under the Securities Act or applicable state securities laws.  Neither the Commission nor any state regulatory authority has passed upon the accuracy or adequacy of this Disclosure Statement, or the exhibits to the statements contained herein, and any representation to the contrary is unlawful.

3.      This Disclosure Statement May Contain Forward Looking Statements

This Disclosure Statement may contain "forward looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995.  Such statements consist of any statement other than a recitation of historical fact and can be identified by the use of forward looking terminology such as "may," "expect," "anticipate," "estimate" or "continue" or the negative thereof or other variations thereon or comparable terminology.  The reader is cautioned that all forward looking statements are necessarily speculative and there are certain risks and uncertainties that could cause actual events or results to differ materially from those referred to in such forward looking statements.  The liquidation analysis, distribution projections and other information contained herein and attached hereto are estimates only, and the timing and amount of actual distributions to Holders of Allowed Claims may be affected by many factors that cannot be predicted.  Therefore, any analyses, estimates or recovery projections may or may not turn out to be accurate.

4.      No Legal or Tax Advice is Provided to You by This Disclosure Statement

This Disclosure Statement is not legal advice to you.  The contents of this Disclosure Statement should not be construed as legal, business, or tax advice.  Each Holder of a Claim or

HTRUST/2336303.3/067837

an Interest should consult his or her own legal counsel and accountant with regard to any legal, tax and other matters concerning his or her Claim or Interest.  This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to Confirmation of the Plan.

5.    No Admissions Made

The information and statements contained in this Disclosure Statement will neither (a) constitute an admission of any fact or liability by any Entity (including, without limitation, the Debtors) nor (b) be deemed evidence of the tax or other legal effects of the Plan on the Debtors, Holders of Allowed Claims or Interest or any other parties in interest.

6.    Failure to Identify Litigation Claims or Projected Objections

NO RELIANCE SHOULD BE PLACED ON THE FACT THAT A PARTICULAR LITIGATION CLAIM OR PROJECTED OBJECTION TO CLAIM IS, OR IS NOT, IDENTIFIED IN THIS DISCLOSURE STATEMENT.  MOREOVER, THE CREDITOR TRUST, AS APPLICABLE, MAY SEEK TO INVESTIGATE, FILE AND PROSECUTE LITIGATION CLAIMS AND PROJECTED OBJECTIONS TO CLAIMS AFTER THE CONFIRMATION OR EFFECTIVE DATE OF THE PLAN IRRESPECTIVE OF WHETHER THE DISCLOSURE STATEMENT IDENTIFIES ANY SUCH CLAIMS OR OBJECTIONS TO CLAIMS.

7.    No Waiver of Right to Object or Right to Recover Transfers and Assets

The vote by a Holder of an Allowed Claim for or against the Plan does not constitute a waiver or release of any Claims or rights of the Creditor Trust to object to that Holder's Allowed Claim, or recover any preferential, fraudulent or other voidable transfer or assets, regardless of whether any Claims or Causes of Action of the Debtors or their respective Estates are specifically or generally identified herein.

8.    Potential Exists for Inaccuracies, and the Debtors Have No Duty to Update

The statements contained in this Disclosure Statement are made by the Debtors as of the date of the Plan, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has not been a change in the information set forth herein since that date.  While the Debtors have used its reasonable business judgment to ensure the accuracy of all of the information provided in this Disclosure Statement and in the Plan, the Debtors nonetheless cannot, and does not, confirm the current accuracy of all statements appearing in this Disclosure Statement.  Further, although the Debtors may subsequently update the information in this Disclosure Statement, the Plan Proponent has no affirmative duty to do so unless ordered to do so by the Bankruptcy Court.

D.    ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

As set forth above, if the Plan is not confirmed, the Debtors' Chapter 11 Cases could be

HTRUST/2336303.3/067837

converted to liquidation cases under chapter 7 of the Bankruptcy Code. Alternatively, other parties in interest may seek confirmation of an alternative plan of reorganization under chapter 11 of the Bankruptcy Code. In chapter 7, a trustee would be appointed to promptly liquidate the assets of the Debtors.

The Debtors believe that in a liquidation under chapter 7, before creditors received any distributions, additional administrative expenses involved in the appointment of a trustee and attorneys, accountants, and other professionals to assist such trustee, along with an increase in expenses associated with an increase in the number of unsecured claims that would be expected, would cause a substantial diminution in the value of the Estates. The assets available for distribution to creditors and equity holders would be reduced by such additional expenses and by Claims, some of which would be entitled to priority, which would arise by reason of the liquidation. A more thorough discussion of the effects that chapter 7 liquidation would have on the recoveries of Holders of Claims is set forth above in Article V.

## VII.    CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

THE DEBTORS AND ITS PROFESSIONALS ARE NOT MAKING ANY REPRESENTATIONS REGARDING THE PARTICULAR TAX CONSEQUENCES OF CONFIRMATION AND CONSUMMATION OF THE PLAN, WITH RESPECT TO THE DEBTORs, HOLDERS OF CLAIMS OR HOLDERS OF INTERESTS, NOR ARE THEY RENDERING ANY FORM OF LEGAL OPINION OR TAX ADVICE ON SUCH TAX CONSEQUENCES. THE TAX LAWS APPLICABLE TO CORPORATIONS IN BANKRUPTCY ARE EXTREMELY COMPLEX, AND HOLDERS OF CLAIMS AND HOLDERS OF INTERESTS ARE STRONGLY URGED TO CONSULT THEIR OWN TAX ADVISORS REGARDING TAX CONSEQUENCES OF THE PLAN, INCLUDING FEDERAL, FOREIGN, STATE, AND LOCAL TAX CONSEQUENCES.

HTRUST/2336303.3/067837

## VIII.    CONCLUSION AND RECOMMENDATION

The Debtors believe that confirmation of the Plan is preferable to the alternatives described above because it provides the greatest distributions and opportunity for distributions to Holders of Claims against the Estates.  In addition, any alternative to confirmation of the Plan could result in extensive delays and increased administrative expenses.

Accordingly, the Debtors urge all Holders of Claims entitled to vote on the Plan to vote to accept the Plan and to indicate such acceptance by returning their Ballots so that they are received no later than 4:00 p.m. (prevailing Eastern Time) on November 18, 2019.

Dated: As of October 7, 2019

Respectfully Submitted,

SILVERMANACAMPORA LLP
Counsel to Tara Jewels Holdings, Inc. and
Tara Jewels LLC *f/k/a* Fabrikant-Tara
International LLC

 *s/ Ronald J. Friedman*
Ronald J. Friedman
Member of the Firm
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300

HTRUST/2336303.3/067837