**SILVERMANACAMPORA LLP**
Counsel to the Tara Jewels Creditor Trust
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Gayle S. Gerson

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

In re:

TARA JEWELS HOLDINGS, INC.

                                    Debtors.

Chapter 7
Case No.: 19-12060 (SCC)
(Jointly Administered)

------------------------------------------------------------------------ X

RICHARD FAUGHNAN, Trustee of the
TARA JEWELS CREDITOR TRUST

                                   Plaintiff,

           -against-

RAJEEV SHETH, NILESH AGASHIWALA, and
AMBICA SINGH

                                   Defendants.

Adv. Pro. No.: _____

------------------------------------------------------------------------ X

<h2 align="center"><u>COMPLAINT</u></h2>

      Plaintiff Richard Faughnan, Trustee of the Tara Jewels Creditor Trust ("<u>Plaintiff</u>" or the "<u>Trustee</u>"), by his attorneys, SilvermanAcampora LLP, for his complaint (the "<u>Complaint</u>") against Rajeev Sheth ("<u>Sheth</u>"), Nilesh Agashiwala ("<u>Agashiwala</u>"), and Ambica Singh ("<u>Singh</u>" and, together with Sheth and Agashiwala, the "<u>Defendants</u>"), alleges as follows:

<h3 align="center"><u>NATURE OF THE ACTION</u></h3>

1.      The Debtors (defined below) were in the business of designing, manufacturing and selling diamond and gemstone jewelry under license from well-known brands to large retailers for resale.

2.      In 2016, the Debtors obtained a $20 million line of credit from First Niagara Bank

GSG/2539799.1/067837.2

(n/k/a KeyBank), collateralized by substantially all of the Debtors' assets, including accounts receivable.

3.      Defendants Sheth and Agashiwala used their positions as officers of the Debtors to siphon the proceeds of the KeyBank line of credit to or for the benefit of themselves, the Debtors' parent company, Tara Jewels Limited (of which Sheth is also the CEO), and third party entities owned and/or controlled by Sheth and/or Agashiwala or their associates.

4.      In addition, Sheth and Agashiwala diverted, to or for the benefit of Tara Jewels Limited and other third-party entities, millions of dollars of the Debtors' accounts receivable that collateralized the KeyBank line of credit.

5.      Once Sheth and Agashiwala diverted the Debtors' legitimate accounts receivable, they directed, authorized, and/or facilitated the fabrication of the Debtors' financial statements and borrowing base certificates based upon phony invoices and purchase orders, in order to artificially inflate the Debtors' ability to borrow. KeyBank reasonably relied upon the Debtors' false financial disclosures when it extended credit and made other financial accommodations to the Debtors.

6.      Further, in direct violation of the terms of the KeyBank loan agreement, Sheth and Agashiwala caused the Debtors to co-sign and guarantee loans from entities other than KeyBank without KeyBank's knowledge, and without any benefit whatsoever to the Debtors. The proceeds of those loans were directed to entities owned and controlled by Sheth, or to pay down the mortgage on his personal residence.

7.      In the midst of Sheth's and Agashiwala's conduct, Singh breached her duties of loyalty and care owed to the Debtors by failing to act with reasonable diligence to discover and prevent their actions.

8.      Evidence of Sheth's and Agashiwala's wrongdoing was so prominent that Singh

GSG/2539799.1/067837.2

either knew, or with reasonable diligence should have known, that Sheth and Agashiwala were raiding the Debtors' assets for their own benefit.

9.      The Defendants' pattern and practice of self-dealing and/or negligent or gross mismanagement of the Debtors' assets hastened the Debtors' slide into bankruptcy.

## JURISDICTION AND VENUE

10.     The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b).

11.     This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (F), (H), and (O).

12.     Venue of this adversary proceeding is proper in this district pursuant to 28 U.S.C. §§1408 and 1409.

## THE PARTIES

13.     Plaintiff Richard Faughnan, a citizen of New Jersey, is the Trustee for the Trust, which was formed pursuant to Article V.C of the Joint Plan of Liquidation (the "Plan of Liquidation") Under Chapter 11 of the Bankruptcy Code of Tara Jewels Holdings, Inc. ("Holdings") and Tara Jewels LLC f/k/a Fabrikant-Tara International LLC ("Fab-Tara," and together with Holdings, the "Debtors[1]").   Pursuant to the Plan of Liquidation, the Debtors transferred certain causes of action, including those asserted herein, to the Trust.

14.     At all times relevant, Sheth was the Chief Executive Officer ("CEO") and a director of both Debtors.

15.     Upon information and belief, Sheth is a resident of India, and maintains a residence in the State of New York, County of New York.

---

[1] The defined term "Debtors" includes within its scope predecessor-in-interest entities.

16. At all times relevant, Agashiwala was the Chief Financial Officer ("CFO") and a director of both Debtors.

17. Upon information and belief, Agashiwala is a resident of the State of New Jersey.

18. At all times relevant, Singh was the Chief Operating Officer ("COO") and a director of both Debtors until her resignation on December 15, 2017, at which time Agashiwala succeeded her as COO.

19. Upon information and belief, Singh is a resident of the State of New York.

**ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

20. The Debtors were importers and wholesalers of diamond and gemstone jewelry, with expertise in designing, manufacturing, and selling goods and merchandise under license from well-known brands.

21. Debtor Holdings was a New York corporation formed on or about July 17, 2006 as a wholly-owned subsidiary of non-debtor Tara Jewels Limited, a publicly traded company in India that is now insolvent.

22. Sheth was the CEO of Tara Jewels Limited.

23. Holdings was the sole member of debtor Fab-Tara, a Delaware limited liability company formed on or about July 13, 2006.

24. Agashiwala was designated in corporate filings as Fab-Tara's sole manager.

**Diversion of the Debtors' Line of Credit**

25. Pursuant to a letter agreement dated December 15, 2015 (the "LOC Agreement"), First Niagara Bank (n/k/a KeyBank) ("KeyBank") extended a line of credit to the Debtors in the amount of $15 million (the "KeyBank LOC"). A true and correct copy of the KeyBank LOC is annexed hereto and made a part hereof as **Exhibit 1**.

4

26.     The LOC Agreement was executed by Agashiwala on behalf of the Debtors.

27.     The KeyBank LOC was secured by a first priority perfected security interest in "all present and future personal property of the Company," (*see* Exhibit 1 ¶6), including, without limitation, inventory, equipment, intellectual property, and accounts receivable.

28.     Pursuant to Paragraph 7 of the LOC Agreement, the Debtors were required to maintain a minimum consolidated fixed charge coverage ratio of 1.25:100, and a maximum consolidated leverage ratio of 6.00:100, as of the last day of each fiscal quarter. (*See id.* ¶7).

29.     The Debtors were required to regularly furnish to KeyBank (i) quarterly and annual financial statements, (ii) a monthly report setting forth the aging of accounts receivable and an inventory designation statement, and (iii) a monthly borrowing base certificate detailing all accounts receivable and other assets available as collateral. (*See id.* ¶8(a)).

30.     KeyBank relied upon that information to o determine how much credit to extend to the Debtors.

31.     The LOC Agreement contained numerous negative covenants, providing that, with the exception of certain delineated circumstances, the Debtors shall not:

> (i)      "…incur or permit any indebtedness for borrowed money, except for … inter-company indebtedness among the Company and the Guarantors in an aggregate amount not to exceed $1,000,000 at any time outstanding…" (*see* ¶8(i));

> (ii)     "…create, permit or suffer to exist a Lien on any of its assets…" including but not limited to accounts receivable (*see* ¶8(j));

> (iii)    "…make any loan or advance to any Person…" (*see* ¶8(o)); or

> (iv)     "…assume, guaranty, endorse, or otherwise be or become directly or contingently responsible or liable for the obligations of any Person…" (*see* ¶8(p)).

32.     The LOC Agreement restricted the Debtors' use of the KeyBank LOC for the

5

following purposes only: (i) repayment of the Debtors' outstanding debt to the State Bank of India; (ii) funding "short-term working capital needs," (iii) furthering the Debtors' "general corporate purposes"; and (iv) obtaining standby letters of credit and commercial letters of credit for the Debtors' account. (*See* Exhibit 1 §1(a)).

33.    On the closing date, KeyBank disbursed $9,600,000 of the $15 million available from the KeyBank LOC (the "Initial Drawdown") as follows:  (a) $8,350,206.67 to the State Bank of India to pay down Fab-Tara's debt, (b) $1,102,793.33 to Fab-Tara bank account number xxxx1628, and (c) approximately $150,000 for attorneys' fees and bank fees.

34.    Upon receipt of its portion of the Initial Drawdown, Fab-Tara initiated several wire transfers to Tara Jewels Limited, the Debtors' parent company, in the total sum of $1,050,000 (the "December 2015 TJL Transfers").

35.    The December 2015 TJL Transfers served no legitimate corporate purpose, and did not provide any commensurate benefit to the Debtors.

36.    On or about July 12, 2016, the Debtors and KeyBank entered into an Amendment to the LOC Agreement increasing the available credit by $5,000,000, for a total line of credit of $20,000,000 (the "LOC Amendment").   A true and correct copy of the LOC Amendment is annexed hereto and made a part hereof as **Exhibit 2**.

37.    On July 22, 2016, the Debtors received an additional $2,300,000 pursuant to the LOC Agreement (the "Second Drawdown").

38.    Upon receiving the Second Drawdown, Fab-Tara initiated several wire transfers out of its bank account, disbursing the *entire sum* to Tara Jewels Limited and Tara Hong Kong, a wholly-owned subsidiary of Tara Jewels Limited (the "July 2016 TJL Transfers" and, together with the December 2015 TLJ Transfers, the "TJL Transfers").

6

39.     Upon information and belief, Sheth and Agashiwala personally directed and/or authorized the TJL Transfers.

40.     Upon information and belief, Sheth and Agashiwala realized a personal benefit from the TJL Transfers.

41.     Upon information and belief, Singh either knew, or with reasonable diligence should have known, that the TJL Transfers occurred and were in violation of the terms of the LOC Agreement.  Singh violated her fiduciary duties of care and loyalty to the Debtors by failing to act with due diligence to discover and/or prevent the TJL Transfers.

42.     By October 2016, Fab-Tara had drawn down the entire $20,000,000 available under the LOC Agreement and LOC Amendment.

43.     Upon information and belief, a substantial portion of the proceeds of the KeyBank LOC was used for the benefit of Tara Jewels Limited and its subsidiary, Tara Hong Kong, rather than to finance the Debtors' "working capital needs" or "short-term corporate purposes," as specified under the LOC Agreement and LOC Amendment.

**Diversion of the Debtor's Accounts Receivable**

44.     In 2015, Tara Jewels Limited was in dire financial condition, and was unable to secure diamonds and other raw materials on credit from any of its suppliers.

45.     Sheth, who was CEO of Tara Jewels Limited, conceived a scheme to use the Debtors' accounts receivable as collateral to enable Tara Jewels Limited to purchase raw materials—notwithstanding the fact that the Debtors had previously pledged those same receivables as collateral for the KeyBank LOC.

46.     Sheth entered into an agreement with Hong Kong diamond dealer Nimesh Mehta, a/k/a Tony Shah ("Shah"), a/k/a Tony Bhai, whereby Shah's company, Diasqua HK/Diaglobe

7

Solitaire ("Diasqua HK"), would supply diamonds and other raw materials to Tara Jewels Limited in exchange for the right to collect accounts receivable from three of the Debtors' most lucrative customers.

47.    To carry out the scheme, Sheth, used an entity called FT Diamond, Inc. ("FTD"), which he had formed in 2007.

48.    FTD is a wholly-owned subsidiary of Tara Duniya Inc., incorporated in the British Virgin Islands. Tara Duniya, Inc. is owned by Sheth.

49.    Sheth, with Agashiwala's assistance, caused three of the Debtors' largest customers, including Sterling Jewelers Inc. ("Sterling"), Helzberg Diamonds ("Helzberg"), and Blue Nile, to divert payments on invoices issued by the Debtor to a new account in the name of FTD (the "Debtor Receivables").

50.    Sheth and Agashiwala induced Sterling, Helzberg and Blue Nile to redirect their payments by advising them that the Debtors were setting up a "new vendor number for their branded business" to keep it separated from their "generic business."

51.    When questions arose, Sheth cautioned an employee of the Debtor to "go ahead and urgently sign whatever documentation is required to establish FTD as the supplier," and to "not clarify more than necessary on matters like ownership."

52.    In May 2015, in furtherance of Sheth's agreement with Shah, Sheth sold FTD to Diasqua HK's New York subsidiary, Diasqua, Inc., pursuant to a stock purchase agreement.

53.    The misdirection of the Debtor Receivables to FTD and Diasqua, Inc. began prior to, and continued well after, the date that the Debtors entered into the KeyBank LOC Agreement, pursuant to which the Debtors pledged those same receivables to KeyBank as collateral.

54.    Sheth and Agashiwala concealed from KeyBank the diversion of the Debtor

GSG/2539799.1/067837.2

Receivables through an elaborate ruse that ensured the merchandise associated with the Debtor Receivables never appeared on the Debtors' books and records. Center stones were supplied by Diasqua to Tara Jewels Limited in India, which manufactured the finished product and shipped it to FTD, at Fab-Tara's address. Fab-Tara staff then shipped the product to the customer, with an invoice. Customers directed their payments to FTD, which forwarded the payment to Diasqua.

55.    Although the Debtor Receivables were diverted to third parties, the Debtors continued to service the business of Sterling, Helzberg, and Blue Nile, including managing sales and distribution and paying royalties owed to the brand licensor.

56.    In this manner, the Defendants were able to conceal the diversion of the Debtor Receivables and perpetuate their scheme.

57.    Upon information and belief, Singh knew, or through reasonable diligence should have known, about the diversion of the Debtor Receivables. Singh violated her duties of care and loyalty to the Debtors by failing to act with due diligence to discover and/or prevent the diversion of the Debtor Receivables.

**Fabrication of the Debtors' Borrowing Base**

58.    As detailed above in paragraph 29, pursuant to the LOC Agreement, the Debtors were required to deliver to KeyBank, *inter alia*, monthly borrowing base certificates certifying that the aggregate obligations then outstanding to KeyBank did not exceed the borrowing limitations set forth in the LOC Agreement.

59.    Under the LOC Agreement, the "Borrowing Base" was calculated as the sum of a percentage of various categories of accounts receivable and inventory. (*See* Exhibit 1 §13).

60.    Paragraph 8(a) of the LOC Agreement provided that, if at any time the borrowing base certificate reveals, or the Debtors have knowledge, that the "aggregate obligations then

GSG/2539799.1/067837.2

outstanding under the Line are in excess of the borrowing limitations set forth in Section 1 hereof," the Debtors are required to "immediately prepay the Loans by an amount necessary to eliminate any such excess ...." (*See* Exhibit 1).

61.    Upon information and belief, Sheth and Agashiwala had ultimate authority over the contents of the borrowing base certificate.

62.    The calculations contained in *every* borrowing base certificate that the Debtors submitted to KeyBank were fabricated at the direction of Sheth and Agashiwala.

63.    For example, on November 3, 2015, Agashiwala sent an email to Vishal Adhyapak, a General Manager of Tara Jewels Limited, requesting help to "fix up" the accounts receivable and "come up with some detailed report" to "match" the borrowing base report he had prepared for KeyBank.

64.    Indeed, in many cases the numbers reported in the borrowing base certificates bore absolutely no relation to the *actual* receivables of the company.  They were, quite simply, made up.

65.    First, the borrowing base certificates excluded the *legitimate* Debtor Receivables that were diverted to third parties.  Second, to make up for the loss of the legitimate receivables, Sheth and Agashiwala ensured that the borrowing base certificate included phony receivables associated with entities owned and/or controlled by Sheth, Agashiwala, or their agents, including, but not limited to entities known as Luxe Designs Group, Inc. ("Luxe"), M.J. Sand LLC ("M.J. Sand"), Princess Trading LLC ("Princess Trading"), and Trenity Spectrum LLC ("Trenity").

66.    Upon information and belief, Luxe is a New Jersey corporation formed on or about March 2, 2017 that is owned by Sampath Kumar, a friend of Agashiwala. Public documents identify Agashiwala as an officer of Luxe.

GSG/2539799.1/067837.2

67.     Upon information and belief, M.J. Sand is a New Jersey limited liability company formed on or about June 26, 2017 that is owned by Amit Shah, a friend of Agashiwala. Public documents identify Agashiwala as an officer of M.J. Sand, and Shah as a director.

68.     Upon information and belief, M.J. Sand has no assets and conducts no legitimate business.

69.     Upon information and belief, Princess Trading is a New York limited liability company formed on or about April 7, 2016. Public documents identify Agashiwala as a registered agent of Princess Trading.

70.     Upon information and belief, Trenity is a New York limited liability corporation formed on or about April 7, 2016. Public documents identify Agashiwala as a registered agent of Trenity.

71.     The borrowing base certificates submitted by the Debtors to KeyBank from the effective date of the LOC Agreement through the Petition Date reflected significant purchases of product by Luxe, M.J. Sand, Princess Trading, and Trenity.

72.     The Debtors, however, did not transact any legitimate business with those entities.

73.     Upon information and belief, to support the fabricated borrowing base certificates, Luxe, M.J. Sand, Princess Trading, and Trenity, at the behest of Sheth and Agashiwala, fabricated purchase orders, invoices, and other transaction documentation, and moved Debtor funds through their accounts to create the illusion of legitimate business activity. In exchange, those entities were paid commissions calculated as a percentage of the funds moving through their accounts.

74.     Upon information and belief, Sheth and Agashiwala caused the Debtors to pay hundreds of thousands of dollars in "commissions" to Luxe, M.J. Sand, Princess Trading and Trenity, for which the Debtors received no benefit.

GSG/2539799.1/067837.2

75.    Upon information and belief, Singh knew, or through reasonable diligence should have known, about the fabrication of the borrowing base certificates. Singh violated her duties of care and loyalty to the Debtors by failing to act with due diligence to discover and/or prevent the fabrication of the borrowing base certificates.

**The Defendants Caused the Debtors to Incur Additional Debt**
**and to Pledge Accounts Receivable in Violation of KeyBank LOC Agreement**

76.    From May 2016 through October 2018, Sheth and Agashiwala caused the Debtors to borrow a total of $3,980,000 from Itria Ventures LLC ("Itria Ventures"), a New York limited liability company, in connection with at least eleven (11) different transactions.

77.    On August 4, 2016, Sheth and Agashiwala caused Holdings to execute a promissory note evidencing a $1 million loan (the "Apartment Loan"), with a one-year term, secured by a mortgage on a condominium Apartment located at 630 First Avenue, Unit 28H, New York, New York (the "Apartment"), which Sheth had purchased in 2007 through an entity known as Star 7, Inc. ("Star 7").

78.    Star 7 is a New York corporation wholly owned by Tara Duniya, which, in turn, is owned and controlled by Sheth.

79.    Star 7 was a co-borrower on the Apartment Loan.

80.    Sheth and Agashiwala caused Fab-Tara to execute a corporate guarantee of Holdings' and Star 7's obligations under the Apartment Loan.

81.    Sheth used the Apartment as his primary residence when in New York.

82.    Agashiwala executed the loan documents on behalf of both Star 7 and Holdings.

83.    By causing the Debtors to execute the promissory note and guarantee in connection with the Apartment Loan, Sheth and Agashiwala caused the Debtors to violate the terms of the KeyBank Loan Agreement.

GSG/2539799.1/067837.2

84.     The Debtors never received any portion of the Apartment Loan proceeds, or any other consideration for the promissory note and guarantee.

85.     The Debtors were insolvent at the time they executed the promissory note and guarantee in connection with the Apartment Loan.

86.     Upon information and belief, the proceeds of the Apartment Loan were disbursed entirely to Star 7.

87.     In addition to the Apartment Loan, Sheth and Agashiwala caused the Debtors to become indebted to Itria in connection with at least ten (10) other loans (the "Additional Itria Loans").

88.     Each of the Additional Itria Loans was guaranteed by Agashiwala.

89.     Each of the Additional Itria Loans was characterized as Itria's purchase of the Debtors' accounts receivable, and was evidenced by a document entitled "Future Receivables Sales Agreement." Indeed, in an acknowledgment of the Debtors' inability to enter into loan agreements without KcyBank's knowledge and consent, the Future Receivables Sales Agreements expressly stated that the transaction was "a sale and not a loan." A true and correct copy of a sample Future Receivable Sales Agreement is annexed hereto and made a part hereof as **Exhibit 3**.

90.     However, the transactions were "sales" in name only. No accounts receivable were, in fact, designated to be sold, attached, or encumbered in any manner. Moreover, as detailed below, documentation reveals payments going from the Debtors to Itria, either directly or indirectly, in repayment of the Additional Itria Loans.

91.     Upon information and belief, the Debtors did not receive any proceeds, or derive any other benefit, from the Additional Itria Loans.

GSG/2539799.1/067837.2

92.    Instead, the proceeds of the Additional Itria Loans were ultimately disbursed to Sheth, Star 7, M.J. Sand, Tara Jewels Hong Kong, and other third-parties.

93.    By causing the Debtors to become indebted under the Additional Itria Loans, Sheth and Agashiwala breached their duties of care and loyalty to the Debtors and caused the Debtors to violate the terms of the LOC Agreement.

94.    Upon information and belief, Singh knew, or through reasonable diligence should have known, that the Debtors were parties to the Apartment Loan and the Additional Itria Loans. Singh violated her duties of care and loyalty to the Debtors by failing to act with due diligence to discover the Debtors' participation in the Apartment Loan and the Additional Itria Loans.

**The Defendants Caused the Debtors to Transfer Millions of Dollars to Itria and Star 7 in Connection with the Apartment Loan and the Additional Itria Loans**

95.    From April 2017 through May 2019, Sheth and Agashiwala caused the Debtors to transfer no less than $831,805.55, directly or indirectly, to Itria and a related entity, Itria Ranger DII, in connection with repayment of the Apartment Loan and the Additional Itria Loans.

96.    From April 2017 through May 2019, at least five (5) transfers of $10,000 each and one transfer of $14,805.55, for a total of no less than $64,805.55, were made from the Debtors' bank account ending in xxxx1628 to Itria (the "$10K Itria Transfers").

97.    From April 2017 through August 2017, at least eight (8) transfers of $12,083.33, for a total of no less than $96,666.64, were made from the Debtors' bank account ending in xxxx1628 to Itria (the "$12K Itria Transfers").

98.    From April 2017 through August 2017, at least seven (7) transfers of $16,916.67 each, for a total of no less than $118,416.69, were made from the Debtors' bank account ending in xxxx1628 to Itria (the "$16K Itria Transfers" and, together with the $10K Itria Transfers and the $12K Itria Transfers, the "Direct Itria Transfers").

14

99.     The Direct Itria Transfers totaled $279,888.88.

100.    Upon information and belief, the Debtors did not receive fair consideration for the Direct Itria Transfers.

101.    Upon information and belief, the Debtors were insolvent at the time the Direct Itria Transfers were made, or were rendered insolvent as a result, because they were unable to repay their debts when due, including their debt to KeyBank.

102.    By causing the Debtors to make the Direct Itria Transfers, Sheth and Agashiwala breached their duties of care and loyalty to the Debtors and caused the Debtors to violate the terms of the KeyBank LOC Agreement.

103.    Upon information and belief, Singh knew, or through reasonable diligence should have known, about the Direct Itria Transfers.  Singh violated her duties of care and loyalty to the Debtors by failing to act with due diligence to discover and/or prevent the Direct Itria Transfers.

104.    From May 2017 through December 2018, a total of $615,000.30 was wired from the Debtors' bank account ending in xxxx1628 to Star 7 (the "Star 7 Transfers").

105.    Star 7 then conveyed the Star 7 Transfers to Itria and Itria Ranger DII.

106.    The Debtors did not receive fair consideration or reasonably equivalent value for the Star 7 Transfers.

107.    Upon information and belief, the Debtors were insolvent at the time of the Star 7 Transfers, or were rendered insolvent as a result, because they were unable to repay their debts when due, including their debt to KeyBank.

108.    The Star 7 Transfers were falsely recorded on the Debtors' books and records as "purchase of accounts receivable," despite the fact that no accounts receivable were designated as having been sold, assigned, or encumbered in any manner.

GSG/2539799.1/067837.2

109.    By causing the Debtors to make the Star 7 Transfers, Sheth and Agashiwala breached their duties of care and loyalty to the Debtors and caused the Debtors to violate the terms of the KeyBank LOC Agreement.

110.    Upon information and belief, Singh knew, or through reasonable diligence should have known, about the Star 7 Transfers. Singh violated her duties of care and loyalty to the Debtors by failing to act with due diligence to discover and/or prevent the Star 7 Transfers.

**The Defendants Caused the Debtors to Transfer Millions of Dollars
to Mercantile Credit Inc. and Johnny Signature Inc.**

111.    In yet another scheme to siphon money from the Debtors to or for the benefit of Sheth and Agashiwala and their associates, Sheth and Agashiwala partnered with Mercantile Credit Inc. ("MCI"), a lender with offices in both the United States and India, which Sheth and Agashiwala sought to pass off as a trade vendor.

112.    Upon information and belief, MCI is owned and controlled by Sheth's friend and/or business associate, Johnny Sanjani.

113.    From December 2015 through May 2017, Sheth and Agashiwala caused the Debtors to transfer approximately $16.8 million to MCI (the "MCI Transfers").

114.    The MCI Transfers were reflected on the Debtors' books and records as payments to MCI for the purchase of loose diamonds.

115.    However, MCI did not sell diamonds, or any other goods, to the Debtors.

116.    A portion of the MCI Transfers were made directly from the proceeds of the KeyBank LOC.

117.    In December 2015, after receiving the Initial Drawdown from the LOC, Defendants caused the Debtors to transfer $1 million to MCI which, in turn, transferred funds to Tara Hong Kong and/or Tara Jewels Limited.

GSG/2539799.1/067837.2

118.    In addition to the MCI Transfers, from May 2016 to June 2017, Sheth and Agashiwala caused the Debtors to transfer a total of $589,000 to another entity owned and controlled by Sanjani, known as Johnny Signature Inc. (the "Signature Transfers").

119.    Upon information and belief, the Debtors did not receive fair value for the MCI Transfers or the Signature Transfers.

120.    Upon information and belief, the Debtors were insolvent at the time of the MCI Transfers and the Signature Transfers, or were rendered insolvent as a result, because they were unable to repay their debts when due, including their debt to KeyBank.

121.    Upon information and belief, Singh knew, or through reasonable diligence should have known, about the MCI Transfers and the Signature Transfers.  Singh violated her duties of care and loyalty to the Debtors by failing to act with due diligence to discover and/or prevent the MCI Transfers and the Signature Transfers.

**The Debtors' Bankruptcy Cases**

122.    On June 21, 2019 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.

123.    By Order dated August 7, 2019, the Court directed the consolidation and joint administration of the Debtors' bankruptcy cases for procedural purposes, under Case No. 19-12060.

124.    By Order dated November 27, 2019, the Court approved the Debtors' First Amended Disclosure Statement and confirmed the Debtors' Joint Plan of Liquidation (the "Plan"), as well as the Creditor Trust Agreement appended as Exhibit A to the Plan.

125.    Upon the Effective Date of the Plan, all the Debtors' assets, including all claims and causes of action, were deemed transferred to the Plaintiff, the Tara Jewels Creditor Trust.

GSG/2539799.1/067837.2

### FIRST CLAIM FOR RELIEF
**Breach of Fiduciary Duties**
<u>**Under New York Business Corporation Law §720**</u>
**(against Sheth and Agashiwala)**

126.    Plaintiff repeats and realleges paragraphs 1 through 125 as if fully set forth herein.

127.    Holdings was a corporation organized and existing under the laws of the state of New York.

128.    Sheth and Agashiwala were officers and directors of Holdings and, as such, owed fiduciary duties of care and loyalty to Holdings, including obligations to exercise good business judgment, to act prudently in the operation of Holdings' business, to discharge their actions in good faith, to act in the best interests of Holdings, and to put Holdings' interests above their own.

129.    Sheth and Agashiwala were required to serve Holdings with undivided loyalties, and to protect and advance the Holdings' interests without regard for the interests of Tara Jewels Limited or any other third party.

130.    As a result of Holdings' insolvency, or being in the zone of insolvency, Sheth and Agashiwala also owed fiduciary duties to Holdings' creditors, including the duties to avoid self-dealing and self-enrichment at the expense of creditors.

131.    Sheth and Agashiwala breached their duties of care, loyalty, and good faith by using their positions as officers of Holdings to advance their own personal financial interests, and the interests of Tara Jewels Limited, other entities in which Sheth and Agashiwala had interests, and friends and associates who assisted in their schemes.

132.    Sheth and Agashiwala breached their fiduciary duties of care, loyalty, and good faith, by, among other things, (a) funneling the proceeds of the KeyBank LOC and other Debtor assets "upstream" to and for the benefit of Tara Jewels Limited; (b) diverting the Debtor Receivables to FTD and Diasqua, to and for the benefit of Tara Jewels Limited; (c) siphoning

Debtor assets to or for the benefit of unrelated third parties owned or controlled by Sheth and Agashiwala and their agents; (d) directing, authorizing and/or facilitating the TJL Transfers, the Direct Itria Transfers, the Star 7 Transfers, the MCI Transfers, and the Signature Transfers, from which Holdings derived no benefit; (e) causing Holdings to incur the Itria loan debt, without the consent or knowledge of KeyBank and without receiving any value in return; and (f) fabricating Holdings' borrowing base certificates and other financial reports submitted to KeyBank to artificially increase Holdings' borrowing capacity.

133.    Each of the foregoing actions caused Holdings to violate the terms of the KeyBank LOC Agreement, and rendered Holdings unable to meet its financial obligations to KeyBank.

134.    Sheth and Agashiwala were aware that the foregoing actions would render Holdings unable to meet its legal and obligations to KeyBank, and unable to pay its debts as they came due in the ordinary course of business.

135.    Sheth and Agashiwala neglected and failed to perform their duties as officers in the management and disposition of Holdings' assets committed to their charge and thereby wasted and mismanaged such corporate assets.

136.    Sheth and Agashiwala acted in bad faith and with conscious disregard of their duties to Holdings and its creditors.

137.    By reason of the foregoing, Holdings was unable to repay its indebtedness to its legitimate creditors, and was required to cease operations and liquidate all assets.

138.    By reason of the foregoing, Holdings was damaged in an amount as yet undetermined, but in no event less than $20,000,000, together with pre-judgment and post-judgment interest thereon.

139.    By reason of the foregoing, Sheth and Agashiwala are liable to Plaintiff to account

GSG/2539799.1/067837.2

for their conduct and to pay damages in an amount as yet undetermined, but in no event less than $20,000,000 together with interest thereon.

### SECOND CLAIM FOR RELIEF
**Breach of Fiduciary Duties**
**Under New York Business Corporation Law §720**
**(against Singh)**

140.    Plaintiff repeats and realleges paragraphs 1 through 139 as if fully set forth herein.

141.    Singh was an officer and director of Holdings and, as such, owed fiduciary duties of care and loyalty to Holdings.  Singh's fiduciary duties included obligations to exercise good business judgment, to act prudently in the operation of Holdings' business, to discharge her actions in good faith, and to act in the best interest of Holdings.

142.    As a result of Holdings' insolvency, or being in the zone of insolvency, Singh also owed fiduciary duties to Holdings' creditors.

143.    Singh breached her duty of care by failing to discharge her duties as an officer and director of Holdings with the degree of care, skill, prudence, and diligence required of her by, *inter alia*, deliberately turning a blind eye to the conduct of Sheth and Agashiwala.

144.    Singh's conduct constituted an extreme departure from the ordinary standard of care.

145.    Singh failed to provide appropriate oversight of Holdings' activities.

146.    Singh failed to act, or to conduct further investigation, when presented with evidence of: (a) the funneling of proceeds of the KeyBank LOC and other Debtor assets "upstream" to and for the benefit of Tara Jewels Limited; (b) the diversion of the Debtor Receivables to FTD and Diasqua, to and for the benefit of Tara Jewels Limited; (c) siphoning of Debtor assets to or for the benefit of unrelated third parties owned or controlled by Sheth and Agashiwala and their agents;  (d)  the transfer of Debtor funds to third parties, including the TJL

GSG/2539799.1/067837.2

Transfers, the Direct Itria Transfers, the Star 7 Transfers, the MCI Transfers, and the Signature

Transfers, from which Holdings derived no benefit; (e) the use of the Debtors as borrowers and/or

guarantors of the Itria loans, without the consent or knowledge of KeyBank and without receiving

any value in return; and (f) the fabrication of Holdings' borrowing base certificates and other

financial reports submitted to KeyBank to  artificially increase Holdings' borrowing capacity.

147.    Singh knew, or through the exercise of reasonable diligence should have known, of

the foregoing acts and omissions.

148.    Singh acted with negligence, gross negligence and/or reckless indifference.

149.    By reason of the foregoing acts and omissions, Singh breached her fiduciary duties

owed to Holdings and is thus liable to account for her conduct and to pay damages in an amount

as yet undetermined, but in no event less than $20,000,000 together with interest thereon.

### THIRD CLAIM FOR RELIEF
### Breach of Fiduciary Duties
### <u>Under Delaware Limited Liability Company Law</u>
### (against Sheth and Agashiwala)

150.    Plaintiff repeats and realleges paragraphs 1 through 149 as if fully set forth herein.

151.    Fab-Tara was a limited liability company organized and existing under the laws of

the state of Delaware.

152.    Sheth and Agashiwala, as officers and/or managers of Fab-Tara, owed fiduciary

duties of care, loyalty and good faith to Fab-Tara and its creditors, including the obligation to act

in the best interests of Fab-Tara without regard to their own interests or those of third parties.

153.    Sheth and Agashiwala were required to serve Fab-Tara with undivided loyalty, and

to be devoted to protecting and advancing its interests.

154.    Sheth and Agashiwala used their positions as officers and/or managers of Fab-Tara

to advance their personal financial interests, and the interests of Tara Jewels Limited and other

21

third parties, and to reward friends and associates for assisting in their scheme.

155.    Sheth and Agashiwala breached their fiduciary duties of care, loyalty, and good faith, by, among other things, (a) funneling the proceeds of the KeyBank LOC and other Debtor assets "upstream" to and for the benefit of Tara Jewels Limited; (b) diverting the Debtor Receivables to FTD and Diasqua, to and for the benefit of Tara Jewels Limited; (c) siphoning Debtor assets to or for the benefit of unrelated third parties owned or controlled by Sheth and Agashiwala and their agents;  (d) directing, authorizing and/or facilitating the TJL Transfers, the Direct Itria Transfers, the Star 7 Transfers, the MCI Transfers, and the Signature Transfers, from which Fab-Tara derived no benefit; (e) causing Fab-Tara to incur loan debt with Itria, without the consent or knowledge of KeyBank and without receiving any value in return; and (f) fabricating Fab-Tara's borrowing base certificates and other financial reports submitted to KeyBank to artificially increase Fab-Tara's borrowing capacity.

156.    Each of the foregoing actions caused Fab-Tara to violate the terms of the KeyBank LOC Agreement, and rendered Fab-Tara unable to meet its financial obligations to KeyBank.

157.    Sheth and Agashiwala were aware that the foregoing actions would render Fab-Tara unable to meet its legal obligations to KeyBank, and unable to pay its debts as they came due in the ordinary course of business.

158.    Sheth and Agashiwala neglected and failed to perform their duties as officers in the management and disposition of Fab-Tara's assets committed to their charge and thereby wasted and mismanaged such corporate assets.

159.    Sheth and Agashiwala acted in bad faith and with conscious disregard of their duties to Fab-Tara and its creditors.

160.    By reason of the foregoing, Fab-Tara was unable to repay its indebtedness to its

GSG/2539799.1/067837.2

legitimate creditors, and was required to cease operations and liquidate all assets.

161.    By reason of the foregoing, Fab-Tara was damaged in an amount as yet undetermined, but in no event less than $20,000,000, together with pre-judgment and post-judgment interest thereon.

162.    By reason of the foregoing, Sheth and Agashiwala are liable to Plaintiff to account for their conduct and to pay damages in an amount as yet undetermined, but in no event less than $20,000,000 together with interest thereon.

## FOURTH CLAIM FOR RELIEF
### Breach of Fiduciary Duties
### Under Delaware Limited Liability Company Law
### (against Singh)

163.    Plaintiff repeats and realleges paragraphs 1 through 162 as if fully set forth herein.

164.    Singh was an officer of Fab-Tara and, as such, owed fiduciary duties of care and loyalty to Fab-Tara. Singh's fiduciary duties included obligations to exercise good business judgment, to act prudently in the operation of Fab-Tara's business, to discharge her actions in good faith, and to act in the best interest of Fab-Tara

165.    As a result of Fab-Tara's insolvency, or being in the zone of insolvency, Singh also owed fiduciary duties to Fab-Tara's creditors.

166.    Singh breached her duty of care by failing to discharge her duties as an officer and director with the degree of care, skill, prudence, and diligence required of her.

167.    Singh, in making decisions on behalf of Fab-Tara, failed to use that degree of care which ordinarily careful and prudent persons would use in similar circumstances, and to consider all material information reasonably available to discover the conduct of Sheth and Agashiwala.

168.    Singh failed to provide appropriate oversight of Fab-Tara's activities.

169.    Singh failed to act, or to conduct further investigation, when presented with

GSG/2539799.1/067837.2

evidence of: (a) the funneling of proceeds of the KeyBank LOC and other Debtor assets "upstream" to and for the benefit of Tara Jewels Limited; (b) the diversion of the Debtor Receivables to FTD and Diasqua, to and for the benefit of Tara Jewels Limited; (c) siphoning of Debtor assets to or for the benefit of unrelated third parties owned or controlled by Sheth and Agashiwala and their agents; (d) the transfer of funds to third parties, including the TJL Transfers, the Direct Itria Transfers, the Star 7 Transfers, the MCI Transfers, and the Signature Transfers, from which Fab-Tara derived no benefit; (e) the use of the Debtors as borrowers and/or guarantors of the Itria loans, without the consent or knowledge of KeyBank and without receiving any value in return; and (f) the fabrication of Fab-Tara's borrowing base certificates and other financial reports submitted to KeyBank to artificially increase Holdings' borrowing capacity.

170.    Singh knew, or through the exercise of reasonable diligence should have known, of the foregoing acts and omissions.

171.    Singh acted with negligence, gross negligence and/or reckless indifference.

172.    By reason of the foregoing acts and omissions, Singh breached her fiduciary duties owed to Fab-Tara and is thus liable to account for her conduct and to pay damages in an amount as yet undetermined, but in no event less than $20,000,000 together with interest thereon.

**FIFTH CLAIM FOR RELIEF**
**Waste and Mismanagement Under**
**New York Business Corporation Law**
**(Against All Defendants)**

173.    Plaintiff repeats and realleges paragraphs 1 through 172 as if fully set forth herein.

174.    The Defendants, as officers and directors of Holdings, caused Holdings to squander its assets, leaving it unable to pay its debts or continue operating as a going concern.

175.    The Defendants caused Holdings to incur debt to Itria, in violation of the terms of the KeyBank LOC Agreement, and without receiving any benefit or consideration in exchange.

GSG/2539799.1/067837.2

176.    The Defendants caused Holdings to divert the Debtor Receivables to FTD and/or Diasqua in violation of the terms of the LOC Agreement, and without receiving any benefit or consideration in exchange.

177.    The Defendants caused Holdings to make the TJL Transfers, the Direct Itria Transfers, the Star 7 Transfers, the MCI Transfers, and the Signature Transfers, in violation of the terms of the LOC Agreement, and without receiving any benefit or consideration in exchange.

178.    By reason of the foregoing, the Defendants unlawfully wasted and mismanaged Holdings' assets.

179.    By reason of Defendants' conduct and omissions, Holdings was harmed in an amount to be proven at trial, but in no event less than $20,000,000.

180.    The Defendants are liable to Plaintiff for the losses they caused, in an amount to be proven at trial, but in no event less than $20,000,000, together with interest.

### SIXTH CLAIM FOR RELIEF
### Waste and Mismanagement Under Delaware Law
### (Against All Defendants)

181.    Plaintiff repeats and realleges paragraphs 1 through 180 as if fully set forth herein.

182.    The Defendants, as officers and/or managers of Fab-Tara, caused Fab-Tara to squander its assets, leaving it unable to pay its debts or continue operating as a going concern.

183.    The Defendants caused Fab-Tara to incur debt to Itria, in violation of the terms of the LOC Agreement, and without receiving any benefit or consideration in exchange.

184.    The Defendants caused the Debtor to divert the Debtor Receivables to FTD and/or Diasqua in violation of the terms of the LOC Agreement, and without receiving any benefit or consideration in exchange.

185.    The Defendants caused the Debtor to make the TJL Transfers, the Direct Itria Transfers, the Star 7 Transfers, the MCI Transfers, and the Signature Transfers, in violation of the

GSG/2539799.1/067837.2

terms of the LOC Agreement, and without receiving any benefit or consideration in exchange.

186.    The foregoing transactions were so one-sided, egregious, and irrational, that no businessperson of ordinary, sound judgment could conclude that Fab-Tara received adequate consideration in exchange therefor.

187.    By reason of the foregoing, the Defendants unlawfully wasted and mismanaged Fab-Tara's assets.

188.    By reason of Defendants' malfeasance, Fab-Tara was harmed in an amount to be proven at trial, but in no event less than $20,000,000, together with interest thereon and attorneys' fees.

189.    The Defendants are liable to Plaintiff for the losses they caused, in an amount to be proven at trial, but in no event less than $20,000,000, together with interest thereon.

**SEVENTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(Against Sheth and Agashiwala)**

190.    Plaintiff repeats and realleges paragraphs 1 through 189 as if fully set forth herein.

191.    By orchestrating and executing the TJL Transfers, the Direct Itria Transfers, the Star 7 Transfers, the MCI Transfers, and the Signature Transfers, and by siphoning valuable assets of the Debtors for no consideration, Sheth and Agashiwala unjustly retained benefits at the expense of the Debtors and the Debtors' creditors.

192.    Justice, equity and good conscience do not permit the Defendants to retain the benefits of conduct in contravention of the Debtors' interests.

193.    As a direct and proximate cause of Defendants' conduct, the Debtors suffered damages in an amount to be determined at trial, but in no event less than $20,000,000.

194.    Plaintiff seeks restitution from Sheth and Agashiwala for the benefit of the Debtors'

GSG/2539799.1/067837.2

creditors and an order directing Sheth and Agashiwala to disgorge all payments, profits, fees, benefits, and other compensation obtained by them as a result of their wrongful conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff as follows:

a. On the First Claim for Relief, entry of judgment against Sheth and Agashiwala in an amount to be determined at trial, but in no event less than $20,000,000, together with interest thereon;

b. On the Second Claim for Relief, entry of judgment against Singh in an amount to be determined at trial, but in no event less than $20,000,000, together with interest thereon;

c. On the Third Claim for Relief, entry of judgment against Sheth and Agashiwala in an amount to be determined at trial, but in no event less than $20,000,000, together with interest thereon;

d. On the Fourth Claim for Relief, entry of judgment against Singh in an amount to be determined at trial, but in no event less than $20,000,000, together with interest thereon;

e. On the Fifth Claim for Relief, entry of judgment against the Defendants in an amount to be determined at trial, but in no event less than $20,000,000, together with interest thereon;

f. On the Sixth Claim for Relief, entry of judgment against the Defendants in an amount to be determined at trial, but in no event less than $20,000,000, together with interest thereon;

g. On the Seventh Claim for Relief, entry of judgment against Sheth and Agashiwala in an amount to be determined at trial, but in no event less than $20,000,000, together with interest thereon;

GSG/2539799.1/067837.2

h.    Awarding Plaintiff its attorneys' fees, costs, and other expenses incurred in this action;

i.    Awarding Plaintiff such other and further relief as the Court deems just and proper.

Dated:  September 2, 2020

SILVERMANACAMPORA LLP
Attorneys for Richard Faughnan, Trustee of
Plaintiff Tara Jewels Creditor Trust


By:    _s/ Gayle S. Gerson_____
Gayle S. Gerson
A Member of the Firm
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300

GSG/2539799.1/067837.2